CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *vs.* NEW YORK AND NEW HAVEN RAILROAD COMPANY.

At the common law a party is not liable *civiliter* for the destruction of human life, whatever the nature of the consequences may be, or however clearly such a wrong may involve pecuniary damage.

Where one person has contract relations with another, an injury to the latter which affects disastrously those relations, does not constitute a legal injury to the former.

Where an insurer has been compelled to pay the insurance on the life of a person, whose death has been caused by the unlawful act of a third person, and where there is no privity of contract between the insurer and the wrong doer, and no direct obligation of the latter to the former growing out of the relation of the wrong doer to the insured, by contract or otherwise; though the loss of the insurer is due to the acts of the wrong doer, yet as those acts affect the insurer only through his artificial relation of contractor with the insured, the loss is a remote and indirect consequence of the act of the wrong doer, and no action therefor can be sustained against him by the insurer.

Therefore, where the defendants, a railroad company, by their negligence had caused the death of A, a passenger on their road, and the plaintiffs, a life insurance company, had been compelled in consequence to pay the amount of an insurance upon the life of A, previously made by them; in an action brought by the latter company against the railroad company to recover the amount so paid, it was held, that the wrong complained of, was not the subject of a suit at law, for reasons appertaining both to the peculiar nature of the wrong, and to the manner in which its consequences were brought home to the party claiming redress.

The principle upon which in any case an insurer is permitted to recover against a party, whose wrongful act has caused the loss which the insurer has been compelled to pay, is not based upon the idea of a direct legal right of the insurer against the wrong doer, but upon the equitable doctrine of subrogation, under which such insurer succeeds to, and is entitled to a cession of, all the means of redress held by the party indemnified, against the party whose act has occasioned the loss. And the insurer can enforce this right only in the name of the insured.

THIS was an action on the case, brought by the Connecticut Mutual Life Insurance Company, against the New York and New Haven Railroad Company, demanding three thousand dollars damages.

The declaration embraced three counts. The first count contained an allegation, that on the 20th day of March 1850, the defendants, for the consideration of eighty-three dollars and fifty cents, executed and delivered to Samuel Beach of

Bridgeport, a policy of insurance upon his life, for two thousand dollars. After setting out the policy, and alleging that the defendants, on the 6th day of May 1853, were the owners of a railroad running from the city of New Haven to the city of Bridgeport, and thence westerly towards the city of New York, and were accustomed to convey passengers over said road for hire, and that on said 6th day of May 1853, said Beach, at the special instance and request of the defendants, was a passenger in the defendants' cars to be therein for certain hire and reward safely carried from said city of New York to said city of Bridgeport, proceeded as follows : " and thereupon it became and was the duty of the defendants to exercise and use all proper care, skill and diligence, that said Beach should be so safely and securely carried and conveyed from said city of New York to said city of Bridgeport; but the defendants disregarding their duty in this behalf, did not, nor would exercise all due and proper care, skill and diligence that the said Beach should be so safely and securely carried and conveyed as aforesaid; but on the contrary thereof, so carelessly, unskillfully and negligently behaved and conducted themselves in the premises, that while said train, with the said Beach therein, was passing and being propelled upon, over and along the defendants said road, viz : on the said 6th day of May, A. D. 1853, in the town of Norwalk aforesaid, a part of said train with the said Beach therein, was with great force and violence precipitated and plunged into a certain stream there situated, known by the name of Norwalk river, and immersed and covered in and by the waters thereof, and so with the said Beach therein, for a long time, viz : for two hours or more next thereafter, continued so immersed and covered; by means of all which the said Beach was greatly bruised, wounded, and injured, and then and there died and lost his life.

Whereby and by reason of all which, the plaintiffs then and there became liable and compelled to pay, and did on the 27th day of August A. D. 1853, pay to Mary Beach, then administratrix on the estate of the said Samuel Beach, the sum of two thousand dollars, being the amount or sum

Conn. Mutual Life Ins. Co. *v.* N. Y. & N. H R R. Co.

which the plaintiffs were then and there compelled, by reason of the death of the said Beach, so caused by the negligent acts of the defendants as aforesaid, to pay as aforesaid, upon said contract or policy of insurance."

The other counts contained no allegations different from those of the first, which it is important to state.

To the declaration the defendants pleaded in bar, that they, being wholly ignorant of the making of said policy of insurance, or of any payment thereon by the plaintiffs, as alleged in their declaration, paid to the administratrix on the estate of said deceased, the sum of five thousand dollars, which she accepted in full satisfaction and discharge of the defendants, from all claims, demands, and rights of action, which the deceased or said administratrix had, for injuries received by the deceased while a passenger over said road, or which his estate or said administratrix had, on account of said injuries and the death of the said Samuel resulting therefrom.

To this plea the plaintiffs demurred, and the questions of law arising upon the demurrer were reserved for the advice of this court.

*Hungerford* and *W. D. Shipman*, for the plaintiffs.

1. The defendants were liable to Samuel Beach, during his life time, in either of two forms of action, viz. : 1. In assumpsit, for breach of their contract to carry him safely from New York to Bridgeport.   2. In case, for injuries caused by their negligence.   Both of these rights of action survived to his administratrix, either of which she could have prosecuted. The former survived at common law, and the latter by our statute of 1848.

2. If at the time of the accident, Samuel Beach had had the property of the plaintiffs with him, the same being lawfully on the defendants' road, which property had been destroyed by the same act that destroyed the life of Beach, the defendants would have been liable to the plaintiffs, for the value of the property so destroyed.   Not indeed, on the ground of a breach of contract, but by reason of a " breach of duty irrespective of any contract."   *Marshall* v. *The York New Castle and Berwick R. Co.*, 7 Eng. L. & E. R., 519, 522.

*Collett* v. *London and N. W. R. Co.*, 6 Eng. L. & E., 305, 308. *Phil. and Reading R. R. Company* v. *Derby*, 14 How., 468, 485. *Farwell* v. *Boston and Worcester R. R. Co.*, 4 Met. R., 49, 55.

3. If Samuel Beach had had his own or another's property with him at the time of the accident, the same being lawfully on the defendants' road, the safe transportation of which having been insured by the plaintiffs, they being authorized to make such contracts of insurance, and such property had been destroyed by the negligence of the defendants; on payment of the value of the property thus destroyed to the insured, the plaintiffs would be entitled to recover the amount thereof of the defendants. *Hart* v. *Western R. R. Corporation*, 13 Met. R., 99 and cases there cited. *Mason* v. *Sainsbury*, 3 Doug. R., 61. (26 E. C. L., 36.) *Clark* v. *Hundred of Blything*, 2 Barn. & Cress., 254. (9 E. C. L. 77.)

4. By the settled policy and express provisions of the law, and by the terms of their charter, the plaintiffs were authorized to insure the lives of individuals, against all contingencies and hazards whatever; those which might arise from being transported from one place to another, as well as others; and in pursuance thereof they insured the life of Samuel Beach. When killed, he was lawfully on the defendants' road. His life was, for the time being, lawfully and with the consent of the defendants, placed in their custody, and by their negligence destroyed, by which the plaintiffs have been compelled to pay the sum named in their policy.

5. This suit is rightfully brought in the name of the plaintiffs. It could not have been brought in the name of the assured, because the same act which produced the event insured against, terminated the natural life of the assured. It could not have been brought in the name of the administratrix, because no right of action for the death of Samuel Beach ever survived to her.

6. The damages in this action are neither remote nor contingent, but immediate, direct, and certain. *Allison* v. *McCune*, 15 Ohio R., 726. *Yates* v. *Joyce*, 11 John R., 136. *Adams* v. *Paige*, 7 Pick. R., 542. *Jones* v. *Van Zandt*, 2

McLean's R., 596. *Smith* v. *Tonstall,* Carthew, 3. *Mason* v. *Sainsbury,* 3 Doug., 61. *Clark* v. *The Hundred of Blything,* 2 Barn. & Cress., 254. *Martinez* v. *Gerber,* 3 Man. & Gran., 88. (42 E. C. L., 55.) *Newbury* v. *Conn. and Pass. Rivers R. R. Co.,* 25 Verm. R., 377. *Lowell* v. *Boston and Lowell R. R. Co.,* 23 Pick. R., 24.

7. The objection stated by Lord Ellenborough in the 1st of Campbell, and cited by Metcalf, J. in *Carey* v. *Berkshire R. R. Co.,* 1 Cush., 475, that the death of a human being can not be the ground of a civil action for damages, does not apply to the present case. This action is not for damages generally, for Beach's death per se, as such. The ground of that rule of the common law (if indeed there be any such rule,) is that no man can be compensated for the loss of his own life; neither can his family or friends be indemnified, either in a legal or popular sense, for the severing of the ties of nature, or for the loss of the society and aid of the deceased, or for the anguish of mind that flows from his death.

8. The discharge set up in the defendants' plea is no bar to a recovery, because, 1. The administratrix had no right of action for the death of the intestate, none having survived or accrued to her, and of course she could discharge none. Whatever the defendants have paid her is for injuries to the deceased during his lifetime. 2. This contract not being one of indemnity, the defendants could not indemnify the deceased or his estate, and thereby discharge the liability of the plaintiffs to pay the amount stipulated in the policy. The payment set up in the discharge, would be no bar to a suit on the policy, and by parity of reasoning it can be no answer to the plaintiffs' claim in this suit.

*Baldwin,* for the defendants.

The defendants say that the matters alleged in the declaration, furnish no cause of action against them in favor of the plaintiffs, for,

1. No right of theirs, and no duty toward them, was violated by the defendants. There was no privity of contract

or otherwise, between the defendants and the insurance company.

2. By the common law, no action was sustainable for damages by reason of the death of any person. *Baker* v. *Bolton*, 1 Camp., 493. *Carey* v. *Berkshire R. R. Co.*, 1 Cush., 475. Such an action now can be sustained only by parties to whom it is given by statute. Those are the personal representations of the deceased.

3. Whenever an action can be sustained by one person, for consequential damage resulting from a personal injury done to another, it must be by reason of some natural or legal relation existing between the plaintiff and the party injured. *Anthony* v. *Slaid*, 11 Met., 290.

Where no such relation exists, but the loss is incurred by reason of some special contract, as by a contractor for the support of town paupers, who has been subjected to increased expense, by a battery committed upon a pauper, the injury is too remote to sustain an action.

There is no case in which the insurers, either of life or property, have ever been holden to be entitled to recover of a wrong doer, consequential damages sustained by them as insurers.

If the injurious act was done willfully, with the intent to injure the plaintiff, that would present a different question. Here the loss or damage complained of by the plaintiffs, is neither the natural, legal, or intended consequence of the act done. See *Longmeid and wife* v. *Holliday*, 6 Eng. L. & Eq., 563.

The railroad company must pay to the persons injured or his representatives the full amount of his damages. They are entitled to no deduction on account of the insurance ; for there is no privity between the wrong doer and the insurer. As between the insurer and the assured, there may be an equitable claim in the case of an insurance on property, to a subrogation of the insurer to the rights of the assured against the wrong doer. But he has no remedy in any other mode. *Yates* v. *Whyte*, 4 Bing. N. C., 272. (33 Eng. C. L., 349.)

In *Mason* v. *Sainsbury*, 3 Doug., 60, it is expressly holden

that the insurer, having paid the assured, can not sue the tort feasor in his own name.    And the same doctrine is affirmed by Parke J., in *Yates* v. *Whyte,* above referred to; and in the case of *Quebec Fire Ins. Co.* v. *St. Louis,* 22 Eng. L. & Eq., 73, and in the case of the *Propeller Monticello,* 17 How., 154.

The consequence of any other doctrine would be most pernicious.    The defendants have made full satisfaction for the injury to the representatives of the deceased, and have no concern with any equities which may exist between them and the insurers, of which they had no knowledge or notice.

STORRS, J.    The defendants, a railroad company, are charged with having negligently occasioned the death of one Dr. Beach, by which event the plaintiffs, a life insurance company, have been compelled to pay to his representatives, the amount of an insurance effected upon his life; of which amount a recovery is sought in this action.    A plea in bar sets forth a payment to the administratrix of the deceased of the damages for which the defendants' negligence had rendered them legally liable, and also a discharge by her.    This plea and the demurrer thereto require no examination, as they are immaterial in the view which we take of the declaration.

It is clear from the declaration, that a pecuniary injury has been sustained by the plaintiffs, in consequence of the unlawful conduct of the defendants.    If the injury thus set forth be actionable, or an injury in a legal sense, there must be a recovery.    But we are of the opinion, that the wrong complained of is not the proper subject of a suit at law, both for reasons appertaining to the peculiar nature of the injury, and to the manner in which its consequences are brought home to the party claiming redress.

The act complained of is the producing of death.    We are at once met with the inquiry, whether under the common law system, a party is liable, *civiliter,* for the destruction of human life, whatever the nature of the consequences may be, or however clearly such a wrong may involve pecuniary damage.

The whole history of the common law of England discloses no recognition of such a liability, although instances of pecuniary loss resulting from death, designedly or negligently produced by human agency, must have been almost without number. In one or two cases the suggestion of such a liability has been summarily contradicted by courts, with such a meagreness or total absence of argument, as almost to give the contradiction the semblance of an *obiter dictum*. Lord Ellenborough, (*Baker* v. *Bolton*, 1 Camp., 493,) said briefly, when a husband sought to recover damages against a wrong doer who had caused his wife's death, for the loss of her society and of the benefit of her services, that in a civil court the death of a human being can not be complained of as an injury.

It is manifestly not one reason but many, which lie at the basis of the common law rule. Considerations of the most varied and grave character would present themselves to the minds of any court, even although the matter should be submitted to them as an original question, to dissuade them from entertaining any action, sounding in damages and seeking a recovery on account of the destruction of life. Should damages be demanded in right of the deceased, for the injury to him, in the name of his representative, a right would clearly be claimed by the mere representative, which, from the nature of things, could never have inhered in the principal for one instant of time. No contract even could be made, recognizing such a right, and providing for a compensation for the loss of one's life. The contract of insurance upon lives was tolerated, not on the ground that death was a proper subject of pecuniary remuneration, but as a mere wager, which might, if lawful, as all wagers once were, depend as well upon the duration of life as upon any other contingency. Or, if a suit should be brought to recover for the mental suffering, loss of society, comfort, support and protection resulting from the death of another person, we should see at once, so intertwined is the web of human affection, interest, and relationship, that the author of his death, however slight or accidental his default, would be responsible

in numberless actions brought on behalf of wives, children, friends, brothers, sisters and dependents of all degrees, to say nothing for the present of creditors, and for an injury of such incalculable extent, writers on jurisprudence, perhaps without strict accuracy, have assigned the awful magnitude of the wrong as the reason why neither court nor jury have ever been trusted by the law with the function of estimating it. The experiment of seeking legal redress for the consequences of death from the wrong doer has sometimes been tried; always in cases where the pecuniary consequences of the injury were so clearly traceable as to make a right to compensation very like a logical necessity; as for instance, where a husband has lost his wife, to all whose manual services he was entitled; (1 Camp., 493;) and where a father had been deprived of his child, all whose labor with all its avails belonged exclusively to his parent. (*Carey* v. *Berkshire R. R. Co.*, 1 Cush., 475.) But such actions, if countenanced, would furnish no sound apology for a limitation of the principle which they involved, and when tested by argument, have invariably been discouraged. The case of *Ford* v. *Monroe*, 20 Wend., 210, is not only an anomaly on the score of principle, but anomalous by reason of the fact that a question so momentous as the right to treat death as an actionable injury, was overlooked both by counsel and the court, in every stage of the case.

Modern legislation, for reasons connected with the public good, has in special cases, and for the benefit of particular persons, and to a limited amount, created a liability for injuries resulting in death, when caused by misconduct of a certain specified character. But so far is this from being a recognition of any common law right or principle, that the extremely artificial quality of such enactments furnishes the highest proof that they substantially create a public offence, with the sanctions of a suitable penalty, which is to be appropriated, as is just, for the benefit of those who in ordinary cases would be the greatest pecuniary sufferers by the death of the deceased.

We have no inclination to abrogate the common law doc-

trine, that the death of a human being, whatever may be its consequences in a pecuniary or in any other aspect, is not an actionable injury.

The other branch of our enquiry, relating to the manner in which the injury complained of was brought home to the party claiming to have suffered by it, concerns principles of great practical interest and novel in their present application. The plaintiffs sustain no relation to the authors of the wrong other than that of mere contractors with the party injured; and their contract liability is the medium through which the injury is brought home to them. They justly say, that their loss is in fact distinctly traceable and solely due to the misconduct of the defendants; that the death of Dr. Beach, caused by the defendants, in a legal sense determined the only contingency out of which their liability grew, and brought upon them the consequences of that liability, which through the defendants' unlawful acts, had now become fixed. Still the question remains, notwithstanding this precise exhibition of cause and effect, whether these consequences, of which the deceased was primarily the subject, and which affected the plaintiffs only because they had put themselves into the position of contractors with him, were in a legal view brought home to the plaintiffs, directly or indirectly. The completeness of the proof of connection between the acts of the defendants and the loss of the plaintiffs, does not vary, although it may tend to confuse, the aspects of the case. The single question is, whether a plaintiff can successfully claim a legal injury to himself from another, because the latter has injured a third person in such a manner that the plaintiffs' contract liabilities are thereby affected. An individual slanders a merchant and ruins his business; is the wrong doer liable to all the persons, who, in consequence of their relations by contract to the bankrupt, can be clearly shown to have been damnified by the bankruptcy? Can a fire insurance company, who have been subjected to loss by the burning of a building, resort to the responsible author of the injury, who had no design of affecting their interest, in their own name and right? Such are the complications of human

affairs, so endless and far-reaching the mutual promises of man to man, in business and in matters of money and property, that rarely is a death produced by human agency, which does not affect the pecuniary interest of those to whom the deceased was bound by contract. "To open the door of legal redress to wrongs received through the mere voluntary and factitious relation of a contractor with the immediate subject of the injury, would be to encourage collusion and extravagant contracts between men, by which the death of either through the involuntary default of others, might be made a source of splendid profits to the other, and would also invite a system of litigation more portentous than our jurisprudence has yet known. So self-evident is the principle that an injury thus suffered is indirectly brought home to the party seeking compensation for it, that courts have rarely been called upon to promulgate such a doctrine. The case however, of *Anthony* v. *Slaid*, 11 Metc., 290, referred to at the bar, is in point. A contractor for the support of paupers had been subjected to extra expense by means of a beating which one of those paupers had received, and he sought from the assailant a recovery of the expenditure. But the court held that the damage was remote and indirect ; having been sustained not by means of any natural or legal relation between the plaintiff and the party injured, but by means of the special contract by which he had undertaken to support the town paupers.

The case, however, would present a different aspect, if by virtue of the contract between the railroad company and the deceased, a direct relation was established between the former and the insurers. If the contract for the transportation of Dr. Beach safely, either in its terms, or through its necessary legal incidents, or by fair inference as to the intent of the parties, devolved upon the railroad company, a duty towards the present plaintiffs, the latter might sue for a violation of that duty. An obligation thus imposed will not always require a suit for its breach to be brought by a party to the contract ; an independent right of action resides in the party to whom the duty was to be performed. In this re-

spect there is no difference between an obligation imposed by law and by contract. Where the duty of keeping a highway is lodged in a certain quarter by statute, the way is to be kept in repair for the public, for every body, and when any person is injured by its defects, the breach of duty is to him, and he has an action for the violation of his right. If a stage coach proprietor agrees with a master to carry his servant, and injures the latter on the road, he is liable directly to the servant; for although undertaken at the request of and by agreement with another, the duty was directly to the party injured. (*Longmeid and ux* v. *Holliday*, 6 Eng. Law & Eq. R., 563.) But it is evident that the present case can not be brought within the principle of such decisions. It would be unfair to argue, that when two parties make a contract, they design to provide for an obligation to any other persons thàn themselves and those named expressly therein, or to such as are naturally within the direct scope of the duties and obligations prescribed by the agreement. On this point it is enough to say, that when an agreement is entered into, neither party contemplates the requirement from the other, of a duty towards all the persons to whom he may have a relation by numberless private contracts, and who may therefore be affected by the breach of the other's undertakings. We can not find that any public law charged the present defendants with any duty to the plaintiffs regarding Dr. Beach's life; nor can we see that Dr. Beach exacted, either expressly or by reasonable intendment, any obligation from the defendants towards the insurers of his life, when he contracted for his transportation to New York. Had the life of Dr. Beach been taken with intent to injure the plaintiffs through their contract liability, a different question would arise, inasmuch as every man owes a duty to every other not intentionally to injure him.

We decide, that in the absence of any privity of contract between the plaintiffs and defendants, and of any direct obligation of the latter to the former growing out of the contract or relation between the insured and the defendants, the loss of the plaintiffs, although due to the acts of the railroad

company, being brought home to the insurers only through their artificial relation of contractors with the party who was the immediate subject of the wrong done by the railroad company, was a remote and indirect consequence of the misconduct of the defendants, and not actionable.

Since the determination of this case we have observed a decision recently made in Maine, (*Rockingham M. F. Ins. Co.* v. *Bosher*, 39 Maine R., 253,) fully confirming the legal theory which we have advanced. The suit was brought against a party who had willfully fired a store, by the insurance company, who had paid the consequent loss, and in their own name. The court dismissed the action on demurrer; taking the same view of the common law doctrine which we have expressed, relative to the indirect and remote manner in which the interests of the insurer were prejudiced by the misconduct of the wrong doer.

The cases in which insurers have been permitted to recover against the authors of these losses, are not in contravention of these principles. They have recovered, not by color of their own legal right, but under a general doctrine of equity jurisprudence, commonly known as the doctrine of subrogation, applicable to all cases, wherein a party, who has indemnified another in pursuance of his obligation so to do, succeeds to, and is entitled to a cession of, all the means of redress held by the party indemnified against the party who has occasioned the loss. In some instances the doctrine has been carried so far, that an insurer has been permitted to recover from the insured such compensation as the latter has subsequently obtained from the wrong doer; as if the money paid by the tort feasor, under such circumstances, was really paid for the use of the insurer. By virtue of this doctrine, there is no doubt of the right of an insurer, who has paid a loss, to use the name of the insured, in order to obtain redress from the author of the wrong; a right to be exercised for the benefit of the party equitably entitled to its benefits, not to be enforced by its possessor in his own name, but by him as the successor to the remedies of the person whom he has indemnified. Having no independent claim on the wrong

doer, he might be successfully met by the superior equities of the wrong doer, such for instance, as a payment to the party directly injured, without notice of the insurer's claim to be subrogated. Nothing can be plainer than that an indirect liability of this kind is an argument rather against the claim of a direct responsibility of the wrong doer, than a suggestion in its favor. The views taken by courts in recognizing the insurer's right of subrogation, tend to sustain the principle which we now maintain. [See case of Propeller Monticello, 17 How R., 154. *Mason* v. *Sainsbury*, 26 E. C. L. R., 36. *Yates* v. *White*, 33 E. C. L. R., 349. *Quebec Fire Ins. Co.* v. *St. Louis*, 22 Eng. Law & Eq. Rep., 73. *Hart* v. *W. R. R. Co.*, 13 Met., 99.]

We advise the superior court to render judgment for the defendants.

In this opinion, the other judges, WAITE and HINMAN, concurred.

Judgment for defendants.