THOMAS N. DALE ET AL. v. OLIVER D. F. GRANT ET AL.

1. A party who, by contract, is entitled to all the articles to be manufactured by an incorporated company—he, such party, furnishing the raw materials—cannot maintain an action against a wrong-doer, who, by a trespass, stops the machinery of such company, so that it is prevented from furnishing, under said contract, manufactured goods to as great an extent as it otherwise would have done.
2. The rights of the plaintiff in such case all arise out of contract, and the damages resulting from an indirect injury to such rights are too remote to form the groundwork of an action at law.

---

The substance of the declaration in this case was as follows, *viz.*:

1. That "The New Jersey Locomotive and Manufacturing Company" were in possession of a certain mill at Paterson

with a right to the use of three square feet of water under a head of twenty-one inches, which water was applied to a water-wheel, and which water-wheel drove a shaft in said mill, called the main shaft, from which the power was transmitted to various parts of the mill.

2. That the said New Jersey Locomotive and Machine Manufacturing Company, for a certain rent, did demise and let to the plaintiffs two upper rooms in said mill, with water power to be taken from the main shaft; also a dye-house, on the west side of the mill, and a building containing a steam boiler, for the term of three years; that the plaintiffs entered into possession, and were furnished with and did take power from the said main shaft by means of a pulley, and from a strap on said pulley running into the rooms and there connecting with a shaft which propelled the machinery.

3. That the plaintiffs, by themselves, and "The Dale Manufacturing Company," occupying under them as hereinafter mentioned, continued to possess and enjoy the said demised premises, with the appurtenances, which the plaintiffs and the said "Dale Manufacturing Company" carried on there on a large scale, &c.

4. That on the 13th of February, 1864, the plaintiffs were incorporated by the name of "The Dale Manufacturing Company," and afterwards organized the said corporation and transferred thereto their said manufacturing business at Paterson aforesaid, and carried on the same under the name of the said company, nevertheless the said plaintiffs being the stockholders of said corporation and the real parties interested in said manufacture; and although the said business of manufacturing was thus from thenceforth carried on in the name of said corporation, yet, by an agreement between it and the said plaintiffs, they, the said plaintiffs, retained the said lease and continued to pay the rent accruing thereon during the said term, allowing the said corporation to occupy the said demised premises, and charging them with the rent so paid; that the said plaintiffs, also, by the said agreement, furnished all the raw silk for said manufacture, and received

all the manufactured products of the said manufacturing business which were made for the plaintiffs by the "Dale Manufacturing Company," under a contract to that effect between the plaintiffs and the said company, and the plaintiffs' profits upon the said manufacture were a large sum, to wit, &c.

5. That the defendants afterwards, &c., unlawfully interfered with the transmission of the said water power so demised to the plaintiffs as aforesaid (and so in the occupancy of the said "Dale Manufacturing Company" as aforesaid in behalf of the said plaintiffs,) sometimes by removing from the said pulley on the main shaft, the said strap by means of which the power was transmitted, and at other times by cutting the said strap; and at other times by loosening the said pulley from its attachment to the said main shaft, and at other times by cutting the said pulley and injuring the same, by means whereof the said manufacturing business of the said "Dale Manufacturing Company," and thereby the business of the said plaintiffs, was frequently and seriously interrupted and stopped, and the mill company was unable to furnish to the plaintiffs the said manufactured products of said business, &c., whereby the said plaintiffs suffered great injury and loss of business and profit which they would otherwise have received and enjoyed; that although the said "Dale Manufacturing Company," during said unlawful interruption, did attempt, in lieu of said water power, to use a steam engine on said premises, yet the defendants frequently hindered and prevented the said "Dale Manufacturing Company" from using the said steam engine by unlawfully putting out the fire under said boiler, and driving and excluding the employés and hands of the said company therefrom, and at other times by cutting and disabling the steam pipe by means of which the steam was conveyed from said boiler to the said engine.

There was a general demurrer to this declaration.

Argued before BEASLEY, CHIEF JUSTICE, and DEPUE, WOODHULL, and VAN SYCKEL, Justices.

For the plaintiffs, *Bradley*.

For defendants, *B. Williamson*.

BEASLEY, CHIEF JUSTICE. This is an action of trespass on the case. The ground of action alleged is, that the defendants unlawfully interfered with and suspended the motive power of a mill used for the manufacture of sewing silk, in which the plaintiffs were interested. The demurrer raises the question whether the declaration discloses a right of suit in the plaintiffs.

In order to answer this inquiry it is necessary to ascertain with definiteness the relative position of the plaintiffs, with respect to the business which it is averred has been unlawfully interpreted. The statements upon the record upon this point are substantially these, *viz.*, that the plaintiffs, being the lessees of two rooms in the mill in question, and of a motive power of a certain designated degree to be used therein, and to be taken from the main shaft, and also of a certain dye-house and a shed containing a boiler, became incorporated under the name of the "Dale Manufacturing Company," and transferred to said corporation their said manufacturing business. It is further averred that the said plaintiffs retained the said lease and paid the rent thereon, and that they allowed the corporation to occupy said premises, and charged it with the rent so paid; that the plaintiffs agreed to furnish all the raw stock and received all the manufactured products of said business which were made for the plaintiffs by the said company, under a contract to that effect between them.

By force of these statements, I think the legal construction must be that the Dale Manufacturing Company is the tenant of the plaintiffs, and is the proprietor of the business in ques-

tion, and that the only right or interest of the plaintiffs in such business is as lessors, stockholders, and contractors for all the products of the manufactory.

The facts set forth in the declaration cannot be controlled by indefinite averments to the effect that the plaintiffs are the real parties in interest. The plaintiffs themselves say that they transferred this manufacturing business to the corporation, and that it. pays the rent of the premises, and has entered into an agreement to the effect that the plaintiffs are entitled to the products of the manufactory. These incidents clearly constitute the corporation the manufacturer in the legal possession and use of the mill. It is true that the raw stock was furnished by the plaintiffs, but this was by force of a contract with the company, and cannot place them in the position of principals in the business. Not a fact appears which indicates that the plaintiffs, except as stockholders of the company, have the right to exercise any control over this business, or that any liability with respect to it is imposed upon them. They sub-let the premises and agreed to furnish the raw material, and that is their whole contribution to the affair. It is to be presumed, as the pleading is silent on the subject, that the corporation is to be at the expense of running the mill in all respects except in procuring the stock for manufacture. From these facts, then, I think, as has been already stated, that the inference must be drawn, that the company is the manufacturer, and the plaintiffs are interested in the business in the triple character of . stockholders, lessors, and as contractors for all the materials in their manufactured form. The point then is presented: have the plaintiffs a right of action, by virtue of either of these three characters, for the wrong which is stated in the declaration?

Regarding, as I do, the corporation as the manufacturers, it is clear that it is the first and immediate sufferer from the illegal acts imputed to the defendants. In this respect the allegations of the pleadings are, that the defendants interfered with the motive power of the mill, sometimes by removing

from the pulley on the main shaft the strap by means of which the power was transmitted, or by cutting the said strap or pulley, and that when the company, to obviate such interference, substituted power derived from a steam engine, that the defendants extinguished the fire under the boiler, and drove out and excluded the employés of the company from the building in which the boiler was situated and which was a part of the demised premises. Obviously, the direct effect of this was to work an injury to the corporation. Its business for the time was suspended—its loss consisting, under ordinary circumstances, of the money spent to repair the damaged machinery, the wages of its hands and agents while idle, the waste of rent and of capital during the intermission of·business, and such other damages as proximately, in a legal sense, were the result of the wrong above specified. And further, I have no doubt that the corporation, in the condition of things just described, would be entitled to recover damages for the loss of the profits which it would have made but for the unlawful interference of the defendants with the operations of its business.

But the present case must rest upon a ground far in advance of this doctrine, for the plaintiffs claim that they also have the right to demand of these defendants, as wrong-doers, reparation for the loss of their anticipated profits. In making such a claim it cannot be pretended that these parties gain any strength from being the lessors and stockholders of the company. Such characteristics are entirely foreign to the matter. As stockholders, they are, it is true, affected by losses arising from trespasses upon the rights of the company; but for such trespasses the remedy must be sought in the name of the corporate body. Their only standing in which there is a semblance of substance is, that they are contractors with the corporation for all the products of the manufactory. The loss, then, which they seek to recover is the second profit on the manufactured article. The first profit is made by the company—and I have said that for the

loss of this, such company, in my apprehension, can recover compensation by action. I assume, as a fair inference, that the company make a profit, although the declaration is silent on the subject, as it cannot be supposed that the goods are, by virtue of the contract mentioned in the pleadings, to be transferred to the plaintiffs at cost. Such an arrangement made between the stockholders and the corporation could not be a fair one, as it would make the company insolvent if subjected to the slightest loss or misadventure. When, therefore, it merely appears in the pleadings that the plaintiffs have contracted on their part to provide the raw material, and the company has contracted on its side to let them have all the articles which shall be manufactured, the only reasonable deduction is that the company is to receive a fair compensation, which consequently must be an increase over the costs. This is the first profit, and the plaintiffs allege they made a profit from the articles so contracted for, and it is for the loss of the second profit that this action is brought. It is also to be remarked that this is the sole subject of the action. It may be that the inference that the plaintiffs are suing to recover compensation for the second profit of the manufacture, has a tendency to increase the difficulties attendant on this action, but it does not appear to me that the result would be changed if we should consider the plaintiffs as making the first profit on these manufactures. The question is, can the plaintiffs recover in either aspect?

The principle of law which alone will sustain such an action is this: that a suit will lie against a wrong-doer who prevents, either in whole or in part, a promiser from fulfilling his contract to the loss of the promisee. The rights of the plaintiffs all flow from their contract with the "Dale Manufacturing Company;" by reason of the defendant's wrongful acts the company cannot manufacture as many goods for the plaintiffs as otherwise would have been the case; the misconduct of the defendants, consequently, has diminished the benefits which would have resulted from their con-

tract. Such is the foundation of this action. The principle, if it exists, is a wide one, for it will embrace every case of an injury to a promisor which lessens his capacity to fulfill his contracts, to the loss of his promisees. If, in the present case, this company had bound itself in five hundred contracts to furnish severally to an equal number of persons a definite portion of its manufactured products, no reason can apparently be assigned why each of such vendees, on the principle claimed, might not maintain an action against these defendants in consequence of the wrongful acts in question. Such causes of action would be infinite. As an example of the class, this case may be put—A, a carriage-builder, for a definite price, agrees with B to make and deliver twenty carriages within a certain time, B providing the materials. The carriage-builder is assailed and wounded by C, so that he cannot fulfill his contract, and B is a loser. B brings his suit against C to recover this loss. I cannot distinguish, in principle, such an instance from the case now before the court, and yet I am unable to find that it has ever been supposed that such an action would lie. Doubtless, if the facts stated in this declaration are true, the plaintiffs, by the misconduct of the defendants, have sustained a loss, and so, generally, do all promisees when their promisors have been illegally obstructed in the performance of their contracts. But the law does not attempt to give full reparation to all parties injured by a wrong committed. If this were so, all parties holding contracts, if such exist, under the plaintiffs who may have been injuriously affected by the conduct of the defendants, would be entitled to a suit. It is only the proximate injury that the law endeavors to compensate; the more remote comes under the head of *damnum absque injuria*. No case touching this question was cited in the briefs of either counsel; and after considerable research, I have found but few authorities pertinent to the subject. In *Anthony* v. *Slaid*, 11 *Metc.* 290, the facts were these: A., who had agreed with the town for a specified sum to support all the town paupers, brought an action against S. for

assaulting and beating one of the paupers, whereby he, A., was put to increased expense for the pauper's cure and support. It was held the action could not be maintained, Chief Justice Shaw saying "it is not by means of any natural or legal relation between the plaintiff and the party injured that the plaintiff sustains any loss by the act of the defendant, but by means of the special contract by which he had undertaken to support the town paupers. The damage is too remote and indirect." In the case cited the law afforded a remedy to the pauper for the injury inflicted, but its power did not extend a remove further, so as to embrace an injury sustained by the plaintiff in the suit arising by reason of his contract. The judicial conclusion in *Cunningham* v. *Brown* rests upon similar grounds. A creditor of a deceased person had brought an action against one who had forged a note, whereby the dividends to creditors had been diminished, and it was decided the suit would not lie. So in one case it has been held that an insurance company could not recover of an incendiary the money paid to the owner of the property destroyed; and in another that a suit could not be maintained in the same right against a person who had caused the death of the party insured. *Rockingham M. F. Ins. Co.* v. *Boscher*, 39 *Maine* 253; *Conn. M. L. Ins. Co.* v. *N. Y. & N. H. R. R. Co.*, 25 *Conn.* 265. The substantial facts which are comprehended in these cases and in the case now before the court are of common occurrence, and the circumstance that there is no precedent for such an action is an almost conclusive argument against its maintainability.

From certain expressions to be found in the declaration in this case it seems to be indicated that the pleader was aware of the difficulty of the suit growing out of the legal principle above referred to, and in some measure endeavored to obviate it. There is a slight coloring given to the affair, vaguely suggesting the notion that the plaintiffs were the manufacturers, the business being done merely in the name of the corporation. As such a use of corporate privileges

would be an abuse of the legislative act, no intendment can be made in favor of such a suggestion, and it would require plain language to induce the conclusion that such fact existed. But, as I have already said, the facts stated lead to the opposite result, and, when opposed by facts, equivocal or uncertain averments lose all force. Besides, if we regard the plaintiffs as the manufacturers in the possession of the mill, the company being their servant, it leads to this result, equally fatal to the present suit, that the form of action has been misconceived, for the injury, under such circumstances, would then be, with respect to the plaintiffs, willful and direct, and consequently a suit in case would not lie. The action would have to be trespass *vi et armis.*

In any aspect of the case, therefore, as it seems to me, the demurrer must be sustained.

WOODHULL and VAN SYCKEL, Justices, concurred.