[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action arises from a fire that occurred on October 26, 1999 at the home of Juanita Jackson. Gwendolyn Stallings, Jackson's sister, perished in the fire, and property damage was caused to the premises, rendering it temporarily uninhabitable. The plaintiff, Utica Insurance Company (Utica), made payments to Jackson for property damage to her home and additional living expenses, totaling $144,171.94.
Jackson had hired the defendants, Visiting Nurse and Home Care, Inc. (Visiting Nurse), a health care provider, and Irene Milhomens, a registered nurse and agent/employee of Visiting Nurse, to provide nursing and home health care services to Stallings. On January 24, 2002 Utica filed a two-count complaint against Visiting Nurse and Milhomens alleging that their negligence caused the fire and resulting property damage. This is a subrogation action to recover the money paid to Jackson as a result of the fire, pursuant to a contract of homeowner's insurance.
The complaint alleges that Stallings was blind, bedridden and was taking legally prescribed narcotics. She lived with her sister in the first floor apartment of Jackson's home. "Upon information and belief", the complaint further alleges that the fire originated in the bedroom occupied by Stallings and was caused by smoking materials being left on or near her bed by the defendants.
Utica maintains that its complaint is one for medical malpractice, and, pursuant to General Statutes § 52-190a, a certificate of good faith was attached to the complaint. Before the court is the defendants' motion to strike Utica's complaint.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotations marks omitted.) CT Page 15625Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted). Dodd v. Middlesex Mutual AssuranceCo., 242 Conn. 375, 378, 698 A.2d 859 (1997). "[A] trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.) Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990). "[G]rounds other than those specified should not be considered by the trial court in passing upon a motion to strike. . . ." (Internal quotation marks omitted.) Gazo v.Stamford, 255 Conn. 245, 259, 765 A.2d 505 (2001). "If a motion to strike is directed to the entire complaint, the motion must fail if any of the plaintiff's claims is legally sufficient." Kovacs v. Kasper,41 Conn. Sup. 225, 226, 565 A.2d 18 (1989).
Visiting Nurse and Milhomens moved to strike Utica's complaint on the ground that no legal duty was owed by the defendants to protect Utica or its insured from the harm which allegedly caused the loss in question, in that the harm was unforeseeable, and that considerations of public policy weigh against imposing a duty on health care providers to the insurers of the premises where they render services. They asserted that Utica's action sounds in simple negligence and not medical malpractice. Utica argues in opposition that it has sufficiently asserted a medical malpractice claim, and that Connecticut courts should permit nonpatient third parties to maintain such actions. Visiting Nurse and Milhomens rejoin that, if this matter is a medical malpractice action, as Utica claims, then the complaint should be stricken in its entirety because Utica has failed to plead one of the requisite elements of the action; viz., the existence of a medical professional patient relationship. Because of Utica's insistence that the complaint here is one for medical malpractice, see Memorandum in Opposition to Motion to Strike the Complaint, p. 1 (#105), the court will consider the motion to strike in that light.
"A motion to strike is the proper procedural vehicle. to test whether Connecticut "is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) Ortiz v. WaterburyHospital, Superior Court, judicial district of Waterbury, Docket No. CV 99 0154112 (March 9, 2000, Pellegrino, J.) (26 Conn.L.Rptr. 547). Utica contends that there is no appellate authority in Connecticut addressing the liability of a health care provider to a third party. It relies on the decisions of other jurisdictions that have considered the issue and have ruled that health care providers are liable for injury suffered by CT Page 15626 third parties. See, e.g., Cram v. Howell, 680 N.E.2d 1096 (Ind. 1997) (doctor did owe duty to unknown third party nonpatient because risk to third party was foreseeable given doctor's actual knowledge of patient's medical history); Freese v. Lemmon, 210 N.W.2d 576 (Iowa 1973) (physician could be liable for injuries sustained by third party injured as result of automobile accident caused by patient). Utica also argues that the property damage sustained was foreseeable, and that Visiting Nurse and Milhomens' negligence was the actual and proximate cause of the fire.
"[P]rofessional negligence or malpractice . . . [is] defined as thefailure of one rendering professional services to exercise that degree f skill and learning commonly applied under all the circumstanes in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Emphasis in original; internal quotation marks omitted.) Vonav. Lerner, 72 Conn. App. 179, 187, 804 A.2d 1018 (2002).
"Medical malpractice actions are a type of negligence action." (Internal quotation marks omitted.) Irahieta v. Donaldson, Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 01 0182260 (December 12, 2001). To recover, the plaintiff must allege and prove the existence of a medical professional/patient relationship. A medical malpractice claim "arises out of the medical professional-patient relationship. . . ." Trimel v. Lawrence Memorial HospitalRehabilitation Center, 61 Conn. App. 353, 358, 764 A.2d 203 (2001). Thus, the threshhold question in every medical malpractice case is whether a medical professional-patient relationship existed between the plaintiff and the professional. Starkweather v. Patel, 34 Conn. App. 395,400, 641 A.2d 809, cert. denied, 230 Conn. 905, 644 A.2d 918 (1994). "A claim for medical malpractice does not exist in the absence of a physician/patient relationship." Williams v. National Railroad PassengerCorp., 16 F. Sup.2d 178, 181 (D. Conn. 1998).
In the present case, Utica has not alleged and cannot prove an essential element of a medical malpractice claim; viz., that there was a medical care provider-patient relationship between it and the defendants because there was no such relationship, in fact. Nevertheless, Utica urges the court to recognize a cause of action that has not previously been recognized in Connecticut.
Not only is the cause of action that Utica advocates not recognized in Connecticut, but on those occasions where the Supreme Court has been asked to do so, it has declined. The most recent case is Jacoby v.Brinckerhoff, 250 Conn. 86, 735 A.2d 347 (1999). In that case, the underlying issue was the extent to which a psychiatrist should be held CT Page 15627 liable for malpractice to a person who was not his patient but the former spouse of his patient. The plaintiff sought damages from the defendant psychiatrist for negligence and medical malpractice in his treatment of the plaintiff's former spouse. The plaintiff claimed that the defendant failed to render proper treatment of the plaintiff's former spouse resulting in direct injury to his marriage.[1] In particular, the court had to decide whether, in the absence of a claim against him by the patient, a psychiatrist owes any duty to the patient's former spouse, to compensate the former spouse or his wife for the claimed injury to the marriage. The court concluded that the former spouse could not prevail on the allegations contained in his complaint, and that the trial court properly rendered a judgment in favor of the psychiatrist. Id. 87
The plaintiff argued that the defendant had a duty to the plaintiff, "since he equally enjoyed or possessed the marital res or status", and it was foreseeable "that any negligence in the defendant's treatment of his former spouse "would directly impact upon the marriage relationship that existed between and [was] shared by both parties."' (Internal quotation marks omitted.) Id. 96. The court stated: "The choice of psycho therapist and psychotherapy belonged to the plaintiff's former spouse and not to him. The psychotherapists whom the spouse chose to consult for treatment owed a duty of undivided loyalty to her and not to him." Id. 97. See alsoFraser v. U.S., 236 Conn. 625 (1996); Zamstein v. Marvasti, 240 Conn. 549,561 (1997).
If the Supreme Court was unwilling to expand the universe of liability for medical malpractice to encompass the patient's spouse, this court is certainly unwilling to bring within its ambit an insurer not even of the patient but of the patient's sister.
Even before the Supreme Court dealt with this issue, Connecticut trial courts had rejected claims significantly stronger than Utica's. InAnonymous v. Hospital, 35 Conn. Sup. 112, 398 A.2d 312 (1978), a plaintiff husband brought a medical malpractice action against a hospital and physician claiming that, as a result of the carelessness and negligence of the defendants during a surgical procedure on his wife, he suffered severe emotional distress and depression. In holding that the plaintiff husband's allegation was legally insufficient, the court stated that "[t]he surgical procedure . . . was personal to the wife. The alleged negligence was a breach of duty owed solely and exclusively to her, and not her husband. Accordingly, the plaintiff husband is not entitled to recover damages. . . ." Anonymous v. Hospital,35 Conn. Sup. 112, 114, 398 A.2d 312 (1979); see also Sackter v. St.Onge, Superior Court, judicial district of Hartford — New Britain at Hartford, Docket No. CV 91. 0504004 (April 14, 1993, Wagner, J.). The CT Page 15628 court in Sackter v. St. Onge, supra, Superior Court, Docket No. CV 91 0504004, was not willing to rely on decisions in other states to impose liability on a physician to third parties.
In the insurance field as well a case worth noting is ConnecticutMutual Life Ins. Co. v. New York New Haven R. Co., 25 Conn. 265
(1856). There, the plaintiff's insured had a life insurance policy with the plaintiff. Id., 266. The insured was a passenger in the defendant's train when the car he was riding in derailed and plunged into a stream, killing him. Id. The insured's widow was paid by the plaintiff pursuant to the life insurance policy. Id., 266-67. The plaintiff then brought suit against the defendant to recover the sums paid pursuant to the policy due to the defendant's alleged negligence. The court stated that "[t]he single question is, whether a plaintiff can successfully claim a legal injury to himself from another, because the latter has injured a third person in such a manner that the plaintiffs' contract liabilities are thereby affected." Id., 274. The court directed judgment for the defendant, holding that "in the absence of any privity of contract between the plaintiffs and defendants, and of any direct obligation of the latter to the former growing out of the contract or relation between the insured and defendants, the loss to the plaintiffs, although due to the acts of the railroad company . . . was a remote and indirect consequence of the misconduct of the defendants, and not actionable." Id., 276 — 77. The court reached this conclusion after finding neither a public law charging the railroad with a duty to insurers of its passengers nor that the insured exacted any obligation from the railroad toward his insurer when he contracted for carriage. Id., 276.
In short, the court held that a duty was not owed to the third-party insurance company notwithstanding any negligence of the railroad company in causing injury to the insured. Similarly, no duty was owed to Utica notwithstanding any alleged negligence of Visiting Nurse and Milhomens in causing property damage to the insured.
The motion to strike is granted.
BY THE COURT
Joseph M. Shortall, J.