## CRAB ORCHARD IMPROVEMENT CO. v. CHESAPEAKE & O. RY. CO.

### No. 4686.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1940.

---

Fletcher W. Mann, of Beckley, W. Va., for appellant.

Jackson N. Huddleston, of Huntington, W. Va. (C. W. Strickling and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for appellee.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from the final judgment of the District Court for the Southern District of West Virginia, dismissing the plaintiff's action to recover from the defendant the amount which plaintiff had been compelled to pay to the West Virginia Workmen's Compensation Fund as a consequence of the defendant's allegedly wrongful act. Crab Orchard Improvement Co. v. Chesapeake & Ohio Ry. Co., 33 F.Supp. 580.

Appellant, Crab Orchard Improvement Company (plaintiff in the original action), operated a coal mine at Eccles, West Virginia. Appellee, Chesapeake & Ohio Railway Company (a Virginia corporation), owned and operated a railroad which ran near appellant's coal mine and into and under appellant's coal tipple. On December 9, 1936, one of appellee's engines, pushing a load of empty coal cars, was being operated by an employee of appellee along appellee's spur track in the direction of the coal tipple. The rear empty coal car struck and killed one of appellant's employees, Andy Henry, while he was in the performance of his duties as an employee of appellant. Because of this death, appellant, as a member of the West Virginia Workmen's Compensation Fund (hereinafter called the Fund), was obliged to pay $4,000 into the Fund; and was further subjected to an increased rate of payment to the Fund, which up to the time of the filing of this action had amounted to $11,000.

Alleging, accordingly, that it had sustained injuries in the amount of $15,000 as a result of appellee's negligence, appellant brought an action on December 6, 1937, in the Circuit Court of Raleigh County, West Virginia, to recover the amounts paid by it under the West Virginia Workmen's Compensation Act (hereinafter called the Act). The suit was thereafter removed to the District Court of the United States for the Southern District of West Virginia. Appellee filed a motion to dismiss the action, and this motion was sustained by the District Court. This appeal was taken from the final judgment of the District Court dismissing the plaintiff's action.

As the District Court stated (33 F.Supp. at page 582): "The question presented in this case is whether an employer who has been forced to pay compensation or death benefits to the dependents of one of its employees who was killed in the course of his employment as a result of the negligence of a third party, may recover the amount so paid, through no fault of its own, from the negligent third party, in the absence of any provision for subrogation or assignment in the Compensation Act by virtue of which the payments were made."

As we view the appellant's theory of the case, there are three specific phases to this question: (1) Has the employer a common-law right of subrogation against the third party tort-feasor? (2) Has the employer a quasi-contractual action for indemnity against the tort-feasor? (3) Has the tort-feasor, by his negligent injury of the employee, breached a legal duty owed to the employer, so as to give rise to a civil action?

■ In considering the legal relationship and liability of employer to employee and the relationship of a third party tort-feasor to employee and to employer, we necessarily must examine the West Virginia Workmen's Compensation Act (Code W.Va.1931, 23-1-1 et seq.), the West Virginia decisions applicable thereto, and the West Virginia decisions, if any, pertaining to the principle of common-law subrogation. See Erie Ry. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ As an introduction to these considerations, we take note of the provisions in the Workmen's Compensation Acts of most of the states, which in express terms assign to the employer, or subrogate him to, the rights of the injured employee, at least to the extent of the compensation paid. E. g., Va. Code Ann. (Michie, 1936) § 1887 (12). The express inclusion of the subrogation provision in Workmen's Compensation Acts prevents the employee from acquiring for a single injury two separate remedies—the one, in tort, against the third party tort-feasor, the other, in contract, under the Workmen's Compensation Act; for it is quite generally held that, in the absence of such an express statutory grant to the employer, the employee retains the right to collect full damages from the third party tort-feasor, in addition to his right to collect compensation under the Act. Cf. Chesapeake & Ohio Ry. Co. v. Palmer, 1927, 149 Va. 560, 140 S.E. 831, 836 (old Act); Newark Paving Co. v. Klotz, 1914, 85 N.J.L. 432, 91 A. 91 (old Act). See also notes (1940) 26 Virginia L.Rev. 524, 525; (1925) 38 Harv.L.Rev. 971, 972. And this is the rule in West Virginia where the Act has no provision covering assignment or subrogation. Merrill v. Marietta Torpedo Co., 1917, 79 W.Va. 669, 92 S.E. 112, L.R.A.1917F, 1043; Mercer v. Ott, 1916, 78 W.Va. 629, 89 S.E. 952.

In the last-cited case, the Supreme Court of Appeals of West Virginia succinctly stated that the West Virginia Act neither released the third party tort-feasor nor assigned the right of action to the employer; that it dealt solely with the relationship of employee and employer, without reference to the tort-feasor; that it created a fund to which an injured employee or his dependents (in case of death) could apply for compensation for injuries sustained in the course of, and arising out of, the employment; that the right to recover compensation out of the Fund was radically different from the right to recover damages from a tort-feasor. Mercer v. Ott, supra, 89 S.E. at page 955. The court then went on to hold that though the employee's personal representative had received damages from the third party tort-feasor, he still retained the right to receive compensation from the Fund. The converse of this holding was recognized in Merrill v. Marietta Torpedo Co., supra, where it was held that an employee, who had received compensation from the Fund, was not thereby prevented from suing the third party tort-feasor.

■ Although it would seem to, it does not necessarily follow that because the employee retains his right of action against the third party tort-feasor, the employer who has paid compensation as a result of

this injury will not be subrogated to this right. Hence, though the Mercer and Merrill cases, supra, are very persuasive, there is no direct authority in West Virginia denying the employer the benefits of this equitable right. It thus becomes necessary to examine both the decisions in other jurisdictions and the principles governing common-law subrogation.

■ Professor Vance, in his outstanding treatise on Insurance (2d Ed., 1930) p. 680, seems to favor the view that the employer, who has paid compensation to his employee under an Act making no provision for subrogation, is, nevertheless, invested with a common-law right of subrogation. This same view is shared by Professor Hardman, through the analogy of fire and marine insurance. See Hardman, The Common-Law Right of Subrogation Under Workmen's Compensation Acts (1926) 26 W.Va.L.Q. 183, 184. However, we believe that under the direct authorities and under the principles governing common-law subrogation, the employer, under such a statute, is left without this remedy against the third party tort-feasor. McCullough v. John B. Varick Co., 1939, 90 N.H. 409, 10 A.2d 245; Newark Paving Co. v. Klotz, supra. See notes (1940) 26 Virginia L. Rev. 524, 525; (1925) 38 Harv.L.Rev. 971, 972 (1918) 18 Col.L.Rev. 598, 600.

The Supreme Court of Appeals of Virginia has clearly recognized that the employer has no common-law right of subrogation against the third party tort-feasor. As the court stated in United States F. & G. Co., Inc. v. Blue Diamond Coal Co., Inc., 1933, 161 Va. 373, 170 S.E. 728, 730: "The right of the employer, or his insurance carrier, does not rest on the principle of subrogation. It is wholly the creature of the statute * * *." This same position is adopted by the New Hampshire court in McCullough v. John B. Varick Co., supra. In that case, an employer brought an action similar to the one in the instant case. He had paid compensation under the New Hampshire Workmen's Compensation Act because of the injury to his employee caused by the alleged negligence of the third party tort-feasor. Like the West Virginia Act, the New Hampshire Act deals solely with the relation of employer and employee and does not concern itself with the rights and obligations of third persons. In denying the right of subrogation to the employer, the court stated (10 A.2d at page 246): "The workmen's compensation laws

of many states provide that the employer shall be subrogated to the rights of an injured employee against a third person who is legally liable to him for causing the injury. Our statute contains no such provision. The repeated inclusion of these provisions in the statutes referred to would seem to indicate that, without them, the employer would have no right of subrogation, and such was the conclusion of this court with reference to cases involving the death of an employee, in Holland v. Morley Button Company, supra [83 N.H. 482, 145 A. 142]."

■■ The doctrine of subrogation and, as we shall try to show hereinafter, the doctrine of indemnity are both based upon the principle that a benefit has been conferred upon the defendant at the expense of the plaintiff. Then, since the plaintiff has discharged an obligation owed by the defendant, it seems proper for the plaintiff to be subrogated to the rights that the principal creditor had against the defendant to the extent of such discharge. Compare Restatement of Restitution § 162 with § 76 (see parallel notes). But an employer making payment under the West Virginia Act fulfills only his own contractual obligation; he does not in any way satisfy the third party tort-feasor's liability to the employee. Merrill v. Marietta Torpedo Co., supra. The liability of the third-party tort-feasor to the employee still exists, as it does in the instant case, notwithstanding the fact that the employee has made a recovery from the Fund. No basis, therefore, remains (under the principle set out above) for applying the doctrine of subrogation. As the court said in McCullough v. John B. Varick Co., supra, 10 A.2d at page 247: "As hereinafter shown, the obligation to pay compensation under the statute rests solely upon the employer and no such obligation is imposed upon a third party who causes injury to one not his servant. It, therefore, appears that the necessary relationship between the parties, out of which a right to subrogation might arise, is not present in a case like the one at bar * * *. *It may now be stated without qualification that, in the absence of contract, legislation is essential to create a right of subrogation in the employer to the rights of an injured employee against a third person.*" (Italics ours.)

For further authorities sustaining the proposition that no common-law right of subrogation exists under the facts of this

case, see Travelers' Insurance Co. v. Georgia Power Co., 1935, 51 Ga.App. 579, 181 S.E. 111, 113; Holland v. Morley Button Co., 1929, 83 N.H. 482, 145 A. 142. Cf. The Federal No. 2, 2 Cir., 1927, 21 F.2d 313.

■ Before leaving the doctrine of subrogation in its application to the employer's rights under Workmen Compensation Acts, we believe it will be helpful to examine the subrogation-principle in its relation to insurance law. In property insurance (i. e., fire or marine insurance), it is well-settled that the insurer, who has been required by contract to indemnify the insured for the actual loss suffered, is entitled to be subrogated to the legal rights belonging to the insured at the time of the loss against the tort-feasor. See Vance on Insurance, p. 668. This rule is the result of the close connection between the principle of indemnity and that of subrogation. Thus, as under indemnity or property insurance the actual value of the property is always the limit of recovery, the insured is required, after being indemnified by the insurer, to subrogate the insurer to any claim or right that he might have against the tort-feasor. Id. at pp. 77, 79. It follows that where the indemnity feature is not present in the insurance contract (viz., life or accident insurance) the subrogation feature has no application. Mercer Casualty Co. v. Perlman, 1939, 62 Ohio App. 133, 23 N.E.2d 502, 504; Aetna Life Ins. Co. v. Parker & Co., 1903, 30 Tex.Civ.App. 521, 96 Tex. 287, 72 S.W. 168, 580, 621 (accident insurance). See also Connecticut Mutual Life Ins. Co. v. New York & N. H. Ry. Co., 1856, 25 Conn. 265, 65 Am.Dec. 571, 576, 577; Mobile L. Insurance Co. v. Brame, 1877, 95 U.S. 754, 24 L.Ed. 580 (life insurance).

■ Life insurance, though based on the indemnity principle, is not itself a contract of indemnity. One of the chief reasons for this is the difficulty involved in placing any pecuniary value upon life. Indemnity insurance looks to a reimbursement to the insured of the *actual* loss sustained. It is this difficulty of appraising human suffering, similar to the difficulty of appraising the value of human lives, that has prompted most of the courts to deny the subrogation feature to accident, as well as life, insurance. In holding that there is no right of subrogation in favor of the insurer on an accident insurance contract, the court in Suttles v. Railway Mail Ass'n, 1913, 156 App.Div. 435, 141 N.Y.S. 1024, 1025, stated: " * * * if the loss insured against is not the same loss for which plaintiff [the insured] had a right of action against the wrongdoer, defendant [the insurer] had no right of subrogation to such claim."

And to the same effect in Gatzweiler v. Milwaukee Elec. Ry. & L. Co., 1908, 136 Wis. 34, 116 N.W. 633, 18 L.R.A.,N.S., 211, 128 Am.St.Rep. 1057, 16 Ann.Cas. 633, the court said: "The doctrine aforesaid [of subrogation] is based on the theory that in a contract of fire insurance the company is a surety and so upon the general equitable principles of subrogation when it, as indemnitor, pays a loss caused by the negligence of a third person its relation with such person is that of principal obligor and surety. It has all the rights against the surety which the principal creditor, so to speak, formerly had. The insured has one claim which he can enforce against either party, but he can have but one satisfaction and the party primarily liable is relievable only by assuming the burden."

■ The analogy of payment under Workmen's Compensation Acts to accident or life insurance contracts is compelling. See Merrill v. Marietta Torpedo Co., supra, 92 S.E. at page 112; Holland v. Morley Button Co., supra, 145 A. at page 144; cf. Fox v. Dallas Hotel Co., 1922, 111 Tex. 461, 240 S.W. 517, 520. Both are subject to the same difficulties in the valuation of human life and human suffering. In fact, compensation from a Fund is not measured by the extent of the employee's injury; rather is it measured by the size of his weekly wage. Thus, instead of being an indemnity, workmen's compensation is more in the guise of a pension or an investment, and, like life and accident insurance, is not subject (in the absence of a statute or specific contractual provision) to the principle of subrogation. But see Hardman, supra, 26 W.Va.L.Q. at p. 184; cf. Vance on Insurance, p. 680.

Before we leave the doctrine of subrogation, mention should be made of the case of Travelers' Ins. Co. v. Great Lakes Engineering Works Co., 6 Cir., 1911, 184 F. 426, 36 L.R.A.,N.S., 60. That case, we think, was really decided on principles of agency; but, insofar as it supports the application of the doctrine of subrogation to the factual situation under discussion we do not feel obliged to follow it.

In thus denying the application of the doctrine of common-law subrogation, we do not find it necessary here to consider the applicability of the West Virginia Wrongful Death Statute to a suit by an employer under the doctrine of subrogation. Code W.Va. 1931, §§ 55-7-5, 6.

We next consider that phase of appellant's theory which deals with the principle of indemnity. This principle is closely interrelated with the principle of subrogation, and, oftentimes, the possessor of the one right is also the possessor of the other. Cf. Restatement of Restitution § 76g. In any event, much of what has been said in reference to the doctrine of subrogation, as here considered, will apply with equal force to the doctrine of indemnity. A broad definition of indemnity is offered in section 76 of the Restatement of Restitution: "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." A scanning of this definition reveals that the indemnity principle is more limited in application than that of subrogation. Not only must a benefit be conferred upon the defendant by a discharge of his duty or obligation, but the discharge must have occurred under circumstances in which the plaintiff was, at the same time, discharging a personal obligation coextensive with that of the defendant.

We think that there is no factual basis here which justifies indemnification. As has been pointed out above, the third party tort-feasor receives no benefit by the employer's payment under the Act. Furthermore, as the duty and obligation of the employer are different and distinct from the duty and obligation of the third party tort-feasor, the requisites for the application of the indemnity principles are not met. A similar conclusion was reached in McCullough v. John B. Varick Co., supra, 10 A.2d at page 247:

"Normally the right to indemnity arises only when there has been a discharge by one person of a duty also owed by another. * * *

"Clearly this is not a case for indemnity within the principles thus stated. The duty of an employer to pay compensation under the statute is entirely separate and distinct from the duty of a third person to pay damages to a servant for personal injuries caused by his negligence. * * *

"We, therefore, conclude that the essential legal obligations from which a right to indemnity may arise, are lacking in the present case."

If a contrary conclusion were reached, the result would be to impose upon the appellee a double liability, which would require it to pay both damages at common law for the injury to the employee, and also the amount of compensation already paid by the appellant.

Foster & Glassell Co. v. Knight Bros., 1922, 152 La. 596, 93 So. 913, held that an employer, by making payment under the Louisiana Workmen's Compensation Act (which gave the employee an option either to claim compensation under the Act or to sue the third party tort-feasor), had an independent action of indemnity against the third party tort-feasor for the amount of compensation which the employer had been obliged to pay his employee. Although under the Louisiana Act (as is not true under the West Virginia Act) the tort-feasor could not be subjected to a double liability, we still believe the case was wrongly decided. Staples v. Central Surety & Insur. Corp., 10 Cir., 1932, 62 F.2d 650, 653, held that under the Oklahoma Compensation Law the employer, as a result of the negligence of the tort-feasors, " * * * had a cause of action, in his own right, for indemnity against appellants [tort-feasors], at common law entirely independent of any provisions of the Compensation Law * * *." The court reached this conclusion by regarding compensation under Workmen's Compensation Acts as analogous to property or indemnity insurance. 62 F.2d at page 654. In this view, we believe that the learned court fell into error. We have already stated our reasons for preferring the closer analogy of Workmen's Compensation Acts to life and accident insurance.

Appellant proceeds upon the final theory that appellee breached a legal duty owed to appellant, and that this breach is actionable. This theory predicates appellee's liability to the appellant on the ordinary principle of tort-liability—that appellee's negligence was the proximate cause, in a chain of causation, resulting in damage to the appellant. The courts, however, have quite uniformly treated such damages as too remote and too indirect to support a recovery. Mobile

L. Insurance Co. v. Brame, supra, 95 U. S. at page 758; The Federal No. 2, supra; Connecticut Mutual Life Ins. Co. v. New York & N. H. Ry. Co., supra, 25 Conn. 265, 65 Am.Dec. at page 574. No legal duty is here owed by the tort-feasor to the employer. It is only where an injury is intentionally calculated to harm the employer in his contractual obligations that recovery may be had. Lumley v. Gye, 2 El. & Bl. 216. Where a husband is allowed to recover for loss sustained by injuries to his wife, or a father for loss of service or expense in the cure of his child, the tort-feasor is held responsible, not because of the contractual aspect of the relationship, but because of the special treatment given by the common law to the particular social status involved. As to these, the tort-feasor is held responsible because he is expected to recognize the natural and probable consequences of his wrong. See The Federal No. 2, supra, 21 F.2d at page 314. However, no such special treatment is given by our law to the relationship of employer and employee. And, until the legislature deems it wise to create a specific social employer-employee status, with additional obligations and immunities thereunto appertaining, the ordinary rules of tort law will here apply.

Appellant cites many cases to support his views. E. g., George A. Fuller Co. v. Otis Elevator Co., 1918, 245 U.S. 489, 38 S.Ct. 180, 62 L.Ed. 422; Washington Gas Light Co. v. District of Columbia, 1896, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712; The No. 34 (L. Boyer's Sons Co.), 2 Cir., 1928, 25 F.2d 602; Pennsylvania Steel Co. v. Washington & Berkeley Bridge Co., D.C. N.D.W.Va. 1912, 194 F. 1011. But these cases are distinguishable. In each of them, the parties seeking indemnity either discharged an obligation for which the defendant was primarily responsible to the injured person, or there existed a contractual or a substantially similar legal relationship between plaintiff and defendant, or else there was a direct breach of a legal duty owed by the defendant to the party seeking indemnity.

We recognize that there are equities which favor here the contention of appellant. The underlying philosophy which has motivated the enactment of a Workmen's Compensation Act would appear to be best subserved when, under such a statute, the ultimate loss is made to fall on the third party tort-feasor, rather than on the innocent employer, and the injured employee is given only one satisfaction (not two satisfactions) for a single wrong. But the West Virginia Act was not drawn to carry out such a philosophy. Accordingly, in the absence of appropriate legislative action, we must follow the apposite rules and principles of the common law. Under the application of these rules and principles to the instant case, the appellant, we believe, is not entitled to the relief that it seeks.

For the foregoing reasons, the judgment appealed from will be affirmed.

Affirmed.