CITY OF ST. JOSEPH, Appellant,

v.

KAW VALLEY TUNNELING, INC., Respondent.

No. WD 33419.

Missouri Court of Appeals, Western District.

Oct. 11, 1983.

John D. Boeh, James O. Turner (argued), St. Joseph, for appellant.

F. Phillip Kirwan, G. Steven Ruprecht (argued), Kansas City, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

The city of St. Joseph appeals from an order granting respondent's Motion for Summary Judgment on a cross claim for indemnity based on a judgment rendered against both parties in an earlier proceeding.

Rule 74.04(c)[1] permits the entry of summary judgment when it is shown "that

---

1. The "Rules" referred to are the Missouri Rules of Civil Procedure. All sectional refer-

there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." Thus, on reviewing the grant of a motion for summary judgment, our duty is to scrutinize the record in the light most favorable to the party against whom the motion was filed and to accord such party every favorable intendment of the record. *Thompson v. Parker,* 608 S.W.2d 415 (Mo.1980); *Perkins v. Schicker,* 641 S.W.2d 432, 433 (Mo.App. 1982). Doing so, we consider the following facts from the record.

In the underlying action giving rise to the controversy involved in the case at bar, the St. Joseph Light and Power Company (hereinafter "Power Company") instituted an action against Kaw Valley Tunneling, Inc., and I.V. Cunningham, Sr., as joint venturers (hereinafter "Kaw Valley"), the City of St. Joseph (hereinafter "city"), and the St. Joseph Water Company to recover for damages to Power Company buildings and facilities occasioned by the construction of an underground sewer system. *St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc.,* 589 S.W.2d 260 (Mo.1979) (en banc).

The opinion in that case reveals the following facts: The sewer was constructed for the city by Kaw Valley pursuant to a written construction contract. Under the terms of the contract, Kaw Valley assumed the duty to "repair or replace any damaged structures, work or materials" occasioned by the operation. The city alone assumed the duty to determine the adequacy of the soil conditions. During the construction, several pieces of the Power Company's property were damaged as a result of ground subsidence.

The Power Company's petition was filed in three counts. Counts I and II alleged

damages resulting from the negligence of the named defendants. Both counts charged negligence on the part of Kaw Valley in (1) causing excessive vibration in the driving of piling, (2) inadequately investigating subsoil conditions, and (3) continuing to pursue an unsafe method of operation knowing it was likely to cause damage to property adjacent to the work. The city was charged with negligence in failing to exercise proper control over Kaw Valley and in failing to take proper steps to avoid damage to the property of others when it knew that continuation of the original method of construction would be likely to cause such damage. Under Count III of its petition, the Power Company sought to recover as a third party beneficiary of the contract between Kaw Valley and the city.

Although the city cross-claimed against Kaw Valley for indemnity, Kaw Valley asserted no cross-claim against the city at that stage of the proceedings.

The trial court, sitting without a jury, found the city liable for the damage to the property[2] based on the city's negligent investigation of the construction site and negligent issuance of specifications and plans. The trial court ordered the city to pay $18,450 to plaintiff—$18,000 for damages to the Chessmore Building and $450 for damage to its steam line. Although the Power Company also produced evidence of damages in the form of the "cost of repair" of several other items damaged by the city's negligence,[3] the court refused to allow these claims because the plaintiff failed to offer evidence as to the "diminution in value" of these items.[4] As to the plaintiff's claims against Kaw Valley, the trial court found in favor of Kaw Valley on each count. More-

---

ences are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

**2.** Those damages, caused by ground subsidence, included damage to an underground duct bank, a locker room building, an office building, the Chessmore Building, and certain sidewalks.

**3.** These items include the underground duct bank, the locker room building, the office building, and the sidewalks.

**4.** Under the general rule, a plaintiff whose property is damaged by the negligence of another may collect only to the extent of the "diminution in value" if it is less than the cost of repair and replacement. *Kirst v. Clarkson Const. Co.,* 395 S.W.2d 487 (Mo.App.1965).

over, the city's cross-claim against Kaw Valley was dismissed.

Both the city and the Power Company appealed from the decision of the trial court. The city appealed the dismissal of its cross-claim against Kaw Valley and the $18,450 judgment rendered against it in favor of the plaintiff, while the Power Company appealed the trial court's determination of damages against the city and its decision absolving Kaw Valley of any liability.

The court of appeals affirmed the trial court's ruling in all respects except with regard to the Power Company's claim against Kaw Valley. The court found that the plaintiff was indeed a third party beneficiary of the construction contract between Kaw Valley and the city and remanded the case to the trial court for an entry of judgment in favor of the Power Company and against Kaw Valley in the amount of $18,450 under Count III of the original petition.

Upon application of the Power Company and the city, the case was transferred to the Supreme Court. In *St. Joseph Power and Light Company v. Kaw Valley Tunneling, supra,* the Court dealt primarily with the following two issues:

> First, whether Kaw Valley is liable to a third party beneficiary of its contract with the city in the face of a trial court finding that Kaw Valley did not breach any provisions of that contract. Second, whether the measure of damages applied by the trial court, diminution of value, is the proper measure or whether the cost of repair or replacement (including cost of razing plaintiff's damaged building), which the Power Company alleges is provided for under the contract, is appropriate.

*Id.* at 264.

The Supreme Court held that the Power Company was entitled to recover against Kaw Valley as a third party beneficiary of the contract between the city and Kaw Valley. The Court held Kaw Valley liable for the full measure of damages ($86,524.46) demonstrated by the plaintiff at trial since under the terms of its contract with the city Kaw Valley was liable for "repair and replacement" costs.[5] Because the Power Company failed to prove the "diminution in value" as to any of its damages except those relating to the Chessmore Building and its steam line, the liability of the city was limited to $30,450. The court arrived at this figure by stating that the $12,000 which the Power Company showed was needed to demolish the Chessmore Building should have been treated as "diminution in value" by the trial court since this expenditure was necessary to put the land to an economic use. This amount, added to the $18,450 judgment already leveled against the city, increased the city's liability to the plaintiff to $30,450. Finally, the court affirmed the trial court's ruling that the plaintiff failed in its burden of proof regarding the balance of its damages.

The Supreme Court let stand the trial court's findings that (1) Kaw Valley was not negligent and (2) it was the negligence of the city which was the sole cause of the damage to the plaintiff.

On remand, in accordance with the Supreme Court opinion, the trial court entered a judgment in favor of plaintiff Power Company in the sum of $86,524.46—$30,450 as a joint judgment against both Kaw Valley and the city and the balance ($56,074.46) against Kaw Valley alone. Kaw Valley immediately filed a cross-petition for indemnity against the city as to all amounts it would be obligated to pay the plaintiff pursuant to the aforementioned judgment on the theory that it was the city's negligence alone which caused the plaintiff's damages. Kaw Valley moved for summary judgment on its claim for indemnity, and on November 18, 1981, the court granted the motion.

---

5. This figure, $86,524.46, arrived at by the trial court on remand, includes $450 in damage to its steam line, $18,000 for the loss of the Chessmore Building, $12,000 for razing the Chessmore Building, $40,160.48 for replacing a duct bank and manhole, $7,500 for repairs to its brick building, $5,888 for replacement of its sidewalk, $1,025.98 for the repair and removal of a loading dock, and $1,500 in repairs to another building.

The city appeals from the granting of Kaw Valley's motion.

The city, in its sole point on appeal, contends that the trial court's granting of the motion is inconsistent with the Supreme Court's opinion in *St. Joseph Light and Power Company v. Kaw Valley Tunneling, supra.* That opinion found the city liable to Power Company for city's negligence in the amount of $30,450, and Kaw Valley liable to Power Company for Kaw's breach of contract in the amount of $86,524.46. The city argues that Kaw Valley's duty to Power Company is not co-extensive or identical with Kaw Valley's duty to the plaintiff. City's liability to the Power Company is based on its negligence; Kaw Valley's liability to the plaintiff is based on its contract with the city. The city contends that Kaw Valley's contractual duty extended to the "repair and replacement" of any items damaged by virtue of the construction; the city's duty was limited to the prevention of any damages proximately caused by its own negligence. In order for a right of full indemnity to arise, city argues, the obligation or duty to be discharged by the indemnitee (Kaw Valley) must be co-extensive or identical with that owed by the indemnitor (city). Thus, the city maintains that its duty to "indemnify" Kaw Valley extends only to the $30,450 joint judgment which Kaw Valley may be forced to satisfy. The city argues that its duty to indemnify Kaw Valley is limited to the extent of city's liability for negligence as determined by the joint judgment rendered in the prior proceeding.

Kaw Valley responds that the trial court properly sustained Kaw Valley's motion for summary judgment on its cross-claim against the city. Kaw Valley contends that its duties and obligations are identical to those of the city. Kaw Valley argues that but for the city's negligence, Kaw Valley would have no contractual liability to the plaintiff. Thus, Kaw Valley contends, that the "fortuitous circumstance" of differing judgment amounts should not preclude Kaw Valley its right to indemnity from the city for the damage the city's negligence caused.

Two primary issues must be resolved in order to determine whether the trial court's grant of summary judgment was proper: (1) whether Kaw Valley is entitled to indemnity as a matter of law for the entire judgment against Kaw Valley under the doctrine of implied indemnity; (2) whether any genuine issue of material fact remains unresolved.

On this appeal, neither party has addressed the question of a right to indemnity based on any contract between Kaw Valley and the city,[6] but both parties address the equitable remedy of implied indemnity. The right to implied indemnity depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer they may recover from him. *Hunter v. De Luxe Drive-In Theaters, Inc.,* 257 S.W.2d 255, 259 (Mo.App.1953); *City of Springfield v. Clement,* 205 Mo.App. 114, 126, 225 S.W. 120, 125 (1920); RESTATEMENT OF RESTITUTION § 76 (1937). Kaw Valley argues that because city was the wrongdoer, the negligent party, and because Kaw Valley was found to be without negligence, city should be required to pay the full amount of damages under the doctrine of implied indemnity. City, however, invokes the principle that the doctrine of implied indemnity applies only where an identical duty owed by one is discharged by the other. *Crab Orchard Improvement Co. v. Chesapeake & O. Ry. Co.,* 115 F.2d 277 (4th Cir.1940); *Harris Corp. Data Communications Div. v. Comair, Inc.,* 510 F.Supp. 1168 (E.D.Ky.1981); *State ex rel. Manchester Insurance and Indemnity Co. v. Moss,* 522 S.W.2d 772, 774 (Mo.1975) (en banc).

---

**6.** The Supreme Court wrote that the contract between city and Kaw Valley did "not provide that Kaw Valley will indemnify the city for any damages caused, except as to damages caused by Kaw Valley's own negligence." The contract "merely makes Kaw Valley responsible for protecting and repairing adjoining property, *in addition to any responsibility the city might bear.*" 589 S.W.2d at 273. (Emphasis added.)

This identical duty requirement is discussed at length in the *Manchester* case. There, an insurer intervened in an action brought by its insured motorist against an uninsured motorist defendant. The insurer cross-claimed against the defendant motorist for indemnity. The insurer asserted that if the uninsured defendant's negligence was found to be the cause of the plaintiff's injuries, then defendant should indemnify insurer, who would be required to pay the plaintiff on its contract of insurance. The trial court dismissed insurer's cross-claim and the insurer filed a petition for writ of prohibition.

The Missouri Supreme Court held that the trial court did not exceed its jurisdiction in dismissing the cross-claim, and discharged the writ. The court noted that although the defendant motorist's negligence may have precipitated the insurer's liability to the insured plaintiff, the insurer's payments to the insured were "separate and distinct from the obligations owed by an uninsured defendant." *Id.* at 775. The insurer's obligation to the plaintiff arose out of its contract of insurance with the plaintiff and thus was not co-extensive with the duty owed to plaintiff by the uninsured defendant which arose out of the latter's negligence. The court, therefore, found the doctrine of implied indemnity inapplicable because the insurer's duty to the plaintiff was not identical to the defendant driver's duty to the plaintiff. Their liabilities to the plaintiff were based on different duties. *Id.* at 774–75.

Similarly, in *Crab Orchard, supra,* the court denied an employer's claim for indemnity where the employer had been forced to pay West Virginia workmen's compensation death benefits to the dependents of one of its employees. Even though the employee was killed solely as a result of the negligence of a third party, the court held that the employer was not entitled to indemnification from the third party. The court found that the duty of the employer to pay compensation under the statute was entirely separate and distinct from the duty of a third person to pay damages caused by his negligence. Thus, the court concluded that an implied right to indemnity was not applicable as the employer's duty was different from the duty of the party from whom employer was seeking indemnification. *Id.* at 282. *See also Harris Corp. Data Communications Div. v. Comair, Inc., supra.*

 Applying these principles to the facts of the case at bar, we conclude that city and Kaw Valley's duties are not identical. City's duty to Power Company arises out of its negligence; Kaw Valley's duty to Power Company arises out of its contract with the city. Thus, as a matter of law, Kaw Valley is not entitled to indemnity from city for the $86,524.46 judgment against Kaw, under the doctrine of implied indemnity because the doctrine is inapplicable unless the indemnitee and indemnitor have co-extensive, identical duties. Although city was found to be the only negligent party in the prior litigation and Kaw's contractual duty may have been precipitated only because of city's negligence, city's duty extends only to those damages proximately caused by its negligence. While Kaw is contractually liable to Power Company for all damages ($86,524.46), Kaw's payment of any of those damages caused by city's negligence would indeed result in a discharge of city's obligation to Power Company. Thus, Kaw is entitled to indemnity as to those damages proximately caused by city's negligence because to that extent Kaw's contractual duty and city's tortious duty overlap and are identical. Kaw is not, however, entitled to indemnity for any damages beyond those which were caused by city's negligence. Those damages are to be borne by Kaw Valley because of Kaw's contractual duties. In other words, to the extent that Kaw Valley's liability was based not on the city's negligence, but on its broader contractual obligation to repair and replace, no right of indemnification should inure.

City concedes in its brief that Kaw Valley is entitled to indemnity for any amounts Kaw would be required to pay to Power Company due to Kaw's contractual duty which are the result of city's negligence.

City, however, contends that those amounts are limited to the prior judgment rendered against it—$30,450.

Thus, city concedes that its duty encompasses those damages proximately caused by its negligence, but argues that those damages have already been adjudicated and are limited to the amount of that judgment —$30,450. The essence of city's argument is that the doctrine of collateral estoppel (issue preclusion) bars Kaw Valley from relitigating the extent of damages caused by city's negligence. If city's argument is correct, then no genuine issue of material fact remains to be litigated and whereas the grant of summary judgment in favor of Kaw Valley for indemnity against the city in the amount of $86,524.46 would be improper as a matter of law, a grant of summary judgment in favor of Kaw Valley in the amount of $30,450 would be proper.

To determine the legitimacy of city's argument we must necessarily determine whether the application of collateral estoppel is appropriate here. In *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo.1979) (en banc), the Court citing *Bernhard v. Bank of America Nat. Trust & Sav. Assn.*, 19 Cal.2d 807, 122 P.2d 892 (1942), and *LaRose v. Casey*, 570 S.W.2d 746, 749–50 (Mo.App.1978), listed the following factors which should be used in making such determination:

> (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

The Supreme Court noted that most courts consider a fourth factor in addition to the three above and that is whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Oates, supra.*

The record establishes that the issue presented in the present indemnity action is identical with the issue in the earlier litigation: The extent of damages caused by city's negligence. The prior adjudication clearly resulted in a judgment on the merits —city's negligence caused damages in the amount of $30,450, and the party against whom collateral estoppel is asserted, Kaw Valley, was indeed a party to the prior litigation, a co-defendant.

If only these factors were to be considered then city's argument would be correct and collateral estoppel would bar Kaw's relitigating the issue of the extent of damages caused by city's negligence. When the fourth factor enunciated by the court is considered, however, a different result ensues. Kaw Valley was a co-defendant in the prior adjudication, and a plaintiff in this indemnity action. While Kaw certainly had a full and fair opportunity to litigate (and in fact did litigate) the issue of its own degree of negligence to the Power Company, we cannot say that Kaw Valley had a fair opportunity to prove the degree of city's negligence in that prior suit. As co-defendant in the prior litigation, Kaw had no reason or incentive to prove the extent of city's negligence to Power Company. Only now, as plaintiff in an indemnity action does Kaw Valley have an incentive to litigate the issue. *See Parklane Hosiery Co., Inc., v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Missouri follows the general rule that a prior judgment is not conclusive in a subsequent action between co-defendants in the prior action unless the co-defendants occupied adversary positions in the prior action and actually litigated therein the issue of their liability as between themselves as well as their liability to the injured party. The rationale for the rule is that in the absence of a statute or rule requiring a defendant to cross-claim against his co-defendant, and in the absence of such a cross-claim, the judgment in the prior action merely adjudicated the rights of the plaintiff as against each defendant, and leaves unadjudicated the rights of the co-defendants as between themselves. "Annotation: Judgment in Action Against Co-defendants for Injury or Death of Person, or for Damage to Property, as Res Judicata in Subse-.

quent Action Between Co-defendants as to their Liability Inter Se" 24 A.L.R.3d 318, 323–24 (1969). *See Stifel v. Butcher,* 487 S.W.2d 24 (Mo.1972); *Missouri Dist. Tel. Co. v. Southwestern Bell Telephone Co.,* 336 Mo. 453, 79 S.W.2d 257 (1934); *O'Rourke v. Lindell Ry. Co.,* 142 Mo. 342, 44 S.W. 254 (1898).

■ Although city did cross-claim against Kaw Valley for indemnity, the cross-claim merely put upon Kaw the burden of litigating its lack of liability to the city, it did not put upon Kaw the burden of litigating the degree of city's negligence to the Power Company or the dollar amount of the damage caused by city's negligence as distinct from the amount caused by Kaw Valley's operations. Thus, the doctrine of collateral estoppel should not bar Kaw Valley from litigating the issue of the extent of damages caused by city's negligence.

Before judgment for the entire $86,524.46 is entered, Kaw Valley should be allowed and required to prove the amount it has been required to pay out under its contract with the city because of the city's negligence. Kaw Valley should be allowed to recover indemnity only for those damages which it can show were proximately caused by city's negligence, not those costs of repair and restoration which were caused by other forces or agencies. The measure of damages is no longer the diminution in value of the damaged property.

■ Because summary judgment may not be granted where a material issue of fact remains unresolved, *Perkins v. Schicker,* 641 S.W.2d 432, 434 (Mo.App.1982); *First National Bank of St. Charles v. Chemical Products, Inc.,* 637 S.W.2d 373, 375 (Mo. App.1982), and because the true extent of the city's liability for negligence has yet to be determined, the order of the trial court granting Kaw Valley's motion for summary judgment should be reversed, and the case remanded for further proceedings consistent with this opinion.

All concur.