# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1849

_____

| | | |
|---|---|---|
| Global Petromarine, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| G.T. Sales & Manufacturing, Inc., | * | Appeal from the United States |
| doing business as Hewitt, U.S.A., | * | District Court for the |
| | * | Western District of Missouri. |
| Defendant/Third Party Plaintiff – | * | |
| Appellant, | * | |
| | * | |
| HBD Industries, Inc., | * | |
| | * | |
| Third Party Defendant – | * | |
| Appellee. | * | |

_____

Submitted: October 16, 2008
Filed: August 17, 2009 (corrected 9/03/09)

_____

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellant, G.T. Sales & Manufacturing, Inc. doing business as Hewitt, U.S.A. (hereinafter "Hewitt"), challenges the district court's dismissal of its indemnification

action through a grant of summary judgment. For the reasons explained below, we reverse and remand this matter to the district court.

I.

The factual underpinnings of this case involve the sale of 17 submarine hoses designed to transport crude oil. Three contracts were entered into to transfer the hoses from HBD Industries, Inc ("HBD"), the manufacturer, to the Syrian Crude Oil Transportation Company ("Scotraco"), the ultimate buyer. This case concerns the first two of those contracts. The first contract is between HBD and Hewitt for the manufacture and purchase of the hoses. The second contract is between Hewitt and Global Petromarine ("Global"), a Lebanese company, for the purchase of the hoses. Global eventually sold the hoses to Scotraco. This third contract between Global and Scotraco is not at issue in this matter.

In the fall of 2001, Global began negotiating with Hewitt for the purchase of the hoses from Hewitt. Hewitt, in turn, commenced simultaneous negotiations with HBD for the manufacturing and purchase of the hoses. HBD normally warranted its hoses for one year from the date the product is shipped from HBD's manufacturing plant. However, as negotiations progressed, Hewitt requested and HBD initially presented a warranty covering "a period of one year from date of Shipment with a prorated warranty for the Second year of service."[1] Hewitt placed the warranty terms on

---

[1]The full text of the warranty was:

Seventeen (17) 12" x 30 ft Hewitt 6918 Submarine Hose Bin with 150# SC WB FF Galvanized Flanges on Quote 7014 dated 9/14/01 warranty for a period of One year from date of Shipment with a prorated warranty for the Second year of service. Standard warranty applies as follows.

Seller warrants that its products and material shall be free from defects in material and workmanship under normal use and service. On

Hewitt letterhead and submitted it to Global along with Hewitt's price quote for the hoses. Global replied that its client, Scotraco, would prefer a one-year warranty dated from the time of receipt of the hoses in its warehouses. In response to this request and after discussing the matter with Hewitt, HBD presented to Hewitt a "[w]arranty for a period of fourteen (14) months from date of ocean bill of lading." The remainder of the warranty terms remained the same. At that time, both HBD and Hewitt understood that either the two-year prorated warranty or the 14-month warranty were available and enforceable against HBD. Eventually, Hewitt and Global settled on the two-year prorated warranty. As part of the contracts, HBD agreed with Hewitt that the hoses' design, manufacture, and testing would comply with international industry standards known as the "OCIMF Guidelines," and Hewitt made the same promise to Global.

Within 90 days after installation of the first hoses, Scotraco notified Global and Global relayed to Hewitt that the hoses were leaking and no longer suitable for their use. At Hewitt's request, sections of the hoses were shipped back to Hewitt for testing. After testing, Hewitt refused to refund the purchase price of the hoses or to

---

equipment and materials furnished by Seller but manufactured by others, Buyer shall accept in lieu of any liability of guarantees on the part of Seller, the benefits of guarantees as are obtained by Seller from such manufactures [sic] or vendors. SELLER MAKES NO WARRANTY OF MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, EXCEPT AS IS EXPRESSLY SET FORTH HEREIN. For any breach of warranty, Seller's liability and Buyer's exclusive remedy shall be limited, at seller's option, to the repair of the defective products and materials, F.O.B. seller's factory, or the repayment of the purchase price. Failure by Buyer to object to or reject products or materials delivered hereunder within 60 days from the date of shipment of the products or materials shall constitute an acceptance and waiver by Buyer of all claims hereunder on account of alleged errors, shortages, defective workmanship of material, breach of warranty or otherwise.

replace the leaking hoses. Global eventually purchased replacement hoses from another source.

Global then filed a complaint against Hewitt, alleging breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and negligent misrepresentation. Hewitt answered the complaint and filed a third-party complaint against HBD, asserting "HBD is obligated to indemnify and hold harmless [Hewitt] from any such claims, and all such costs, fees, expenses and damages related thereto, because HBD designed, manufactured, tested, packaged and shipped the subject hoses . . . [and] because HBD warranted the subject hoses."

HBD moved for partial summary judgment. In its motion, HBD sought an order concluding that, *inter alia*: (1) as a matter of law, HBD had effectively disclaimed the implied warranties of merchantability and fitness for a particular purpose, (2) Hewitt's damages to Global for breach of warranty were limited, by either the two-year prorated warranty or the 14-month warranty, to repair of the defective products and materials or repayment of the purchase price, and (3) HBD's liability, if any, to indemnify Hewitt was limited to $10,732 under the two-year prorated warranty or $5,600 under the 14-month warranty.

Hewitt opposed HBD's motion for partial summary judgment, arguing that implied indemnity is available to Hewitt against HBD for the entire amount of any recovery obtained against Hewitt by Global. Hewitt also claimed that the warranty obligated HBD to pay the entire purchase price for all of the hoses because some of the hoses manifested the defect prior to the end of the first year of the warranty. Finally, Hewitt maintained that the "exclusive remedy" clause should not be applied to the relationship between Hewitt and HBD because it would lead to an unconscionable result.

Hewitt also sought summary judgment as to Global's claims against Hewitt and as to Hewitt's indemnity claim against HBD. In its motion, Hewitt argued that it presented a 90-day warranty to Global via a "brochure" and that this 90-day warranty "disclaim[ed] all warranty liability on the part of Hewitt, whether express or implied . . . except for the limited express warranty stated therein; however, such express warranty liability [was] also disclaimed, with respect to products sold by Hewitt but manufactured by others." According to Hewitt, under this 90-day warranty "it is clear that Global expressly agreed not to hold Hewitt liable on any warranties regarding the hoses, but would rely solely on those warranties (if any) provided to it by the actual manufacturer of the hoses." Accordingly, Hewitt argued that Global was limited to pursuing claims against HBD under the warranties Hewitt issued.

Alternatively, Hewitt argued, in its summary judgment motion, that HBD was required to indemnify Hewitt if Hewitt was held liable to Global on the basis of the warranty terms submitted by HBD and transmitted to Global by Hewitt. That indemnification would also include attorneys' fees expended in defending Global's action because Hewitt demanded HBD defend Hewitt and HBD refused. Further, under implied indemnity, Hewitt argued that HBD would be obligated to indemnify Hewitt for any liability imposed against Hewitt on the basis that the hoses did not comply with OCIMF Guidelines for manufacturing, that production testing on the hoses was inaccurate or incomplete, or that the hoses were not "of new materials and manufacture." According to Hewitt, HBD assured Hewitt that the hoses would meet those OCIMF Guidelines for production and testing, and Hewitt in turn made the same assurances to Global.

The district court denied Hewitt's motion for summary judgment against Global and HBD. As to Global's claims against Hewitt, the district court held that genuine issues of material fact remained concerning whether the hoses were manufactured in compliance with OCIMF guidelines, whether Global was entitled to recover against Hewitt for either express or implied warranties contingent upon the applicability of

the 90-day warranty and the two-year prorated warranty, and whether the economic loss doctrine serves as a bar to Global's claim for negligent misrepresentation.

As to Hewitt's third-party claim against HBD, the district court held that, because there is no express indemnification provision in the contract between Hewitt and HBD, the only form of indemnification that Hewitt may seek is through the equitable remedy of implied indemnity. Applying Missouri law, the district court held that implied indemnity was applicable only where an identical duty owed by one is discharged by the other. The court found that Hewitt was not entitled to implied indemnity because (1) HBD had no legal obligation to Global, (2) Hewitt made separate representations and warranties to Global via Hewitt's brochure which contained a 90-day warranty, and (3) the negotiations between HBD and Hewitt evince a lack of intention that any type of indemnity apply to the contract. In view of its determination that Hewitt was not entitled to indemnification from HBD, the district court concluded that HBD's motion for summary judgment against Hewitt was moot.

After the entry of the district court's denial of its motion for summary judgment against HBD, Hewitt sought a new scheduling order in its third-party action against HBD. The day after Hewitt sought the new scheduling order, Hewitt and Global reached a settlement and filed a joint Stipulation of Dismissal, requesting that the district court order the dismissal of Global's claims against Hewitt. Through a Clerk's Order of Dismissal entered at the direction of the district court, Global's claims against Hewitt were dismissed with prejudice. On the same day, the clerk also entered a Judgment in a Civil Case, referencing the district court's order denying Hewitt's motion for summary judgment. HBD then filed an objection to Hewitt's request for a new scheduling order, arguing that all of Hewitt's indemnification claims had been disposed of when the district court denied Hewitt's motion for summary judgment as that denial had effectively dismissed Hewitt's indemnification claim against HBD.

-6-

The district court agreed with HBD. In an order denying as moot Hewitt's motion for a new scheduling order, the court "clarifie[d] [that] its ruling on Hewitt's motion for summary judgment dated March 12, 2008 . . . disposed all of Hewitt's claims against HBD . . . and granted judgment in HBD's favor." The court explained that "it [would be] a waste of judicial resources to have HBD file a dispositive motion on the indemnification issues because [the] issue ha[d] already been determined." The district court further declined to reconsider its decision to apply Missouri law, recognizing that Hewitt had earlier argued in favor of applying Missouri law over that of North Carolina.

Hewitt now brings this appeal, arguing that: (1) the question of indemnification has not been properly adjudicated in the district court and, (2) even if such an adjudication has occurred, the district court erred in its determination that HBD was not required to indemnify Hewitt. As part of its second contention, Hewitt argues that the district court erred in applying Missouri law instead of either North Carolina or South Carolina law.

## II.

### A.

The first issue we address is whether the district court's denial of summary judgment to Hewitt resulted in a judgment in favor of HBD as to Hewitt's indemnification claim. Hewitt recognizes that, in denying summary judgment, the district court "conclu[ded] that Hewitt was not entitled to assert an indemnification claim against HBD," but asserts that "the district court did not purport to grant summary judgment to HBD." (Appellant's Br. 28.) According to Hewitt, "the district court's denial of Hewitt's summary judgment motion did not constitute an adjudication of Hewitt's claim for indemnification." (Id.)

This court has previously held that a determination of summary judgment *sua sponte* in favor of the prevailing party is appropriate so long as the losing party has notice and an opportunity to respond. See McNees v. Mountain Home, Ark., 993 F.2d 1359, 1361-62 (8th Cir. 1993); Chrysler Credit Corp. v. Cathey, 977 F.2d 447, 449 (8th Cir. 1992) (per curiam). In Cathey, we affirmed a *sua sponte* grant of summary judgment in favor of cross-defendants who were not a part of the summary judgment proceedings between the plaintiff and the defendant. 977 F.2d at 449. Because, the plaintiff's right to summary judgment and the cross-defendants' right to summary judgment turned on the same issue, "the district court had no reason to delay the entry of judgment for the [cross-defendants]." Id.

We are presented with an analogous situation. In denying Hewitt's motion for summary judgment as to its indemnification claim against HBD, the district court determined that Hewitt was not entitled to indemnity from HBD. As it presented the claim to the district court, Hewitt had notice of the issue, and it is clear that it had considerable opportunity to address the indemnification claim. Accordingly, we agree that the district court was permitted to, and did effectively, enter summary judgment *sua sponte* in favor of HBD when it denied Hewitt's motion for summary judgment on its indemnification claim.

B.

Next we address the choice-of-law issue. Hewitt argues that, under the Restatement (Second) of Conflict of Laws, the district court should have applied either the law of North Carolina (where HBD manufactured the hoses) or South Carolina (where HBD delivered the hoses to Global), instead of the law of Missouri (where Hewitt's facility is located).

"We review a district court's choice-of-law determination de novo." Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d

582, 585 (8th Cir. 2007). When deciding choice-of-law issues, the district court sitting in a diversity action generally applies the choice-of-law rules of the forum state. Id. It is not disputed that Missouri has generally adopted the Restatement (Second) of Conflicts of Law when deciding choice-of-law questions. See Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo. 1969) (en banc) (abandoning the *lex loci delicti* rule in favor of the proposed Restatement (Second) of Conflicts of Law § 145).

Hewitt argues that, under section 191 of the Restatement, the district court should have applied the law of either North Carolina or South Carolina, as the hoses were delivered in one of those locations. Section 191 provides:

> The validity of a contract for the sale of an interest in a chattel and the rights created thereby are determined . . . by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless . . . some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties . . . .

Restatement (Second) of Conflict of Laws § 191 (1971). Hewitt has not offered a specific example of a Missouri court applying section 191, and we have been unable to locate such a case. Nevertheless, we agree that Missouri courts would likely apply section 191 if given the opportunity to do so because Missouri courts have frequently applied other sections of the Restatement (Second) of Conflicts of Law. See Bauer v. Farmers Ins. Co., 270 S.W.3d 491, 493 (Mo. Ct. App. 2008) (applying sections 188 and 193); Natalini v. Little, 185 S.W.3d 239, 247-54 (Mo. Ct. App. 2006) (applying sections 6, 145, and 175).

Hewitt, however, did not properly present section 191 of the Restatement to the district court as the basis for the appropriate choice of law determination prior to the district court's decision on the merits of the indemnification claim. When HBD moved for summary judgment on the indemnification claim, it argued that sections 6 and 188 of the Restatement supported the application of North Carolina law to the

contract between HBD and Hewitt. Hewitt directly opposed this stance, arguing instead that, under section 188, the place of contracting strongly favored Missouri. Further, in Hewitt's motion for summary judgment against both Global and HBD, it also sought the application of Missouri law, relying on SSM Health Care St. Louis v. Radiologic Imaging Consultants, LLP, 128 S.W.3d 534 (Mo. Ct. App. 2003), for its implied indemnity argument. Noticeably absent from Hewitt's motion for summary judgment is any reference to the application of North Carolina or South Carolina law as it pertains to the indemnification request.

It would be improper at this point to allow Hewitt to alter its posture as to choice of law when it invited the district court to apply Missouri law. See Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 739 n.15 (11th Cir. 1995) (rejecting argument as to choice of law where plaintiff "acquiesced in the court's choice of law decision throughout the trial, changing course only after the court granted" defendant's motion for judgment as a matter of law); Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) ("In the absence of exceptional circumstances, . . . a litigant is bound by a plausible choice of law which it successfully urged the trial court to follow."). Hewitt asked the district court to apply Missouri law, and the district court granted this request. Accordingly, we will not reverse the district court decision as to choice of law.

C.

We now reach the question of indemnification. We review the district court's grant of summary judgment de novo. Trinity Prods. Inc. v. Burgess Steel, L.L.C., 486 F.3d 325, 330 (8th Cir. 2007) (standard of review). We will affirm the grant of summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The district court, applying Missouri law, held that Hewitt and HBD "d[id] not have co-extensive, identical duties with respect to Global as required under Missouri law." The district court based this holding on the fact that HBD had no contractual relationship with Global and that Hewitt's contract with Global contained different warranty terms than the contract between Hewitt and HBD. Specifically, the court determined that Hewitt supplied to Global a 90-day warranty as described in its brochure that was not part of HBD's warranty to Hewitt, thus eliminating the required element of co-extensive, identical duties.

The general rule under Missouri law is that, "[i]ndemnity is a right which inures to a person who has discharged a duty which is owed by him, but which, as between himself and another, should have been discharged by the other, so that if the second does not reimburse the first, the second is unjustly enriched to the extent that his liability has been discharged." State ex rel. Manchester Ins. & Indem. Co. v. Moss, 522 S.W.2d 772, 774 (Mo. 1975) (en banc). However, "[t]he doctrine of indemnity applies only where an identical duty owed by one is discharged by another." Id.

In denying Hewitt's implied indemnity claim, the district court relied upon City of St. Joseph v. Kaw Valley Tunneling, Inc., 660 S.W.2d 26 (Mo. Ct. App. 1983), and Denny's Inc. v. Avesta Enterprises, Ltd., 884 S.W.2d 281 (Mo. Ct. App. 1994). In both of these cases, the reason the Missouri appellate courts denied the claims under the doctrine of implied indemnity was that the underlying basis for the claims differed, and thus the duties were not identical or coextensive.

For example, in City of St. Joseph, a construction company entered into a contract with the city to build a sewer system. 660 S.W.2d at 28. As part of that contract, the construction company agreed to repair or replace any structures damaged as a result of the project, but the city maintained responsibility for determining the adequacy of the soil conditions. Id. During construction, a third party incurred property damage as a result of ground settling. Id. This injured party obtained a

judgment against the construction company, and the construction company then sought implied indemnification from the city for the full amount of the judgment. Id. at 28-29. A Missouri Court of Appeals held that the city's duty to the injured party was due to its negligence in failing to determine that the soil was adequate for construction. Id. at 31. The construction company's duty to the injured party arose from the company's contractual agreement with the city wherein the construction company agreed to repair or replace any structures damaged by the sewer project. Id. Thus, the court explained that the city was not required to indemnify the construction company for all damages but was required to indemnify the construction company only "as to those damages proximately caused by [the] city's negligence because *to that extent* [the construction company's] contractual duty and [the] city's tortious duty overlap and are identical." Id. (emphasis added).

In reaching the outcome in City of St. Joseph, the Missouri Court of Appeals relied upon Manchester. In Manchester, the Missouri Supreme Court explained that an automobile insurance company had no right to indemnification from an uninsured driver who caused an automobile accident with the company's insured motorist. 522 S.W.2d at 775. The insurance company's duty to the insured was "not coextensive with the duty owed by the [uninsured driver]. [The insurance company's] duty to pay [the insured arose] from the uninsured motorist coverage in its insurance policy, and payments made pursuant thereto [did] not in any way constitute the discharge of [the uninsured driver's] duty to the [insured]." Id. at 774. Because any payment made by the insurance company to its insured would not discharge a claim the insured would have against the uninsured driver, the duties were not coextensive and identical, and therefore the insurance company was not entitled to indemnification from the uninsured driver.

The Missouri Court of Appeals in applying the Manchester decision in Koeller By and Through Koeller v. Unival, Inc., 906 S.W.2d 744 (Mo. Ct. App. 1995), stated that "a seller lower in the chain of distribution who sells a product without actual or

constructive knowledge of a defect and who has no duty to inspect is entitled to indemnity against one higher in the chain, such as the manufacturer." Id. at 746. Similarly, a United States District Court applied the Manchester decision in denying summary judgment to a manufacturer in a products liability action. See City of Clayton v. Grumman Emergency Prods., Inc., 576 F. Supp. 1122 (E.D. Mo. 1983). The district court determined that

> a retailer may have a right to indemnification from the manufacturer of a component part based on breach of either an express or implied warranty . . . [if] the retailer . . . show[s] that (1) he bought the part from the manufacturer to be held liable, (2) the same express or implied warranties he made to the consumer were made to him by the manufacturer, (3) the defect on which the retailer's breach of warranty liability was established constitutes a breach by the manufacturer of the same warranty as made to the retailer, and (4) he gave notice of the consumer's lawsuit against him to the manufacturer.

Id. at 1128.

We conclude that the district court improperly granted summary judgment in favor of HBD on the ground that HBD did not retain a duty to Global coextensive and identical to the duty that Hewitt maintained to Global. If Global is able to recover from Hewitt based on the two-year prorated warranty that was originally presented to Hewitt by HBD, Hewitt might be entitled to indemnification from HBD. The mere inclusion of the additional 90-day warranty found in Hewitt's brochure to its customers would not necessarily cause Hewitt's obligations to Global to lose its coextensive and identical character with HBD's obligations to Global. HBD proposed the language of the two-year prorated warranty, HBD presented that language to Hewitt, and HBD agreed that Hewitt could include the two-year warranty in Hewitt's contract with Global, after negotiations were held among Global, Hewitt, and HBD. Those negotiations included considerable collaboration between Hewitt and HBD. Similarly, if Hewitt is responsible because the hoses were not manufactured in

-13-

compliance with OCIMF requirements, HBD could be obligated to indemnify Hewitt because HBD bore the same obligation under its contract with Hewitt.

When the district court denied Hewitt's motion for summary judgment against Global, it determined material questions of fact exist concerning the extent to which, and the basis for, Hewitt's liability to Global. Therefore, material questions of fact also remain as to HBD's duty to indemnify Hewitt. We remand this matter to the district court for further proceedings including an examination of the settlement reached between Hewitt and Global and a determination of how the terms of the settlement bear on Hewitt's indemnification claim.

III.

Accordingly, we reverse and remand.

_____